2008 ND 164

### GRINNELL MUTUAL REINSURANCE COMPANY, Plaintiff and Appellee,

v.

### Lisa R. THIES, Defendant,

### J. Jeffrey Geiger and Vicki Jo Geiger, Defendants and Appellants.

No. 20080017.

Supreme Court of North Dakota.

Sept. 4, 2008.

Lyle W. Kirmis, Zuger Kirmis & Smith, Bismarck, N.D., for plaintiff and appellee.

Benjamin E. Thomas, Wold Johnson, Fargo, N.D., for defendants and appellants.

VANDE WALLE, Chief Justice.

[¶ 1] J. Jeffrey and Vicky Jo Geiger appealed from a summary judgment declaring Grinnell Mutual Reinsurance Company was not obligated to provide the Geigers with coverage for a third-party claim under a homeowner's insurance policy issued to the Geigers. We hold Grinnell Mutual's insurance policy with the Geigers did not provide coverage for a third-party claim against them because the third-party claim did not result in bodily injury or property damage caused by an occurrence during the policy period. We affirm.

I

[¶ 2] From August 2001 through July 20, 2006, the Geigers owned a house in West Fargo. The Geigers insured the house under a "Home–Guard 2" insurance policy issued by Hartland Mutual Insurance Company on behalf of itself and Grinnell Mutual, which was effective from September 5, 2005, through July 20, 2006, when the Geigers sold the house to Lisa Thies and cancelled the policy. The policy provided coverage by Hartland Mutual under Section I for "Property Coverages" and by Grinnell Mutual under Section II for "Personal Liability Coverages."

[¶ 3] Thies claimed that within one week after moving into the house, she began feeling sick and discovered mold. Legend Technical Services conducted a microbial investigation of the house in September and October 2006, and found wetness and mold within the walls of the house. Legend Technical Services issued a report concluding the "amount of decay and dry rot of the wood framing inside the walls indicates the windows and/or wall system have been leaking for years." Thies sued the Geigers to rescind the sale, or alternatively, for damages associated with repairing and restoring the house. Thies alleged that, soon after occupying the house, she began suffering headaches, nausea, dizziness, and breathing problems caused by mold in the wood framing of the house. She claimed "decay and dry rot within the walls of the Property as well as the mold found within and outside the Property are a result of chronic, long term exposure to water," and the Geigers "knew or should have known of the chronic water intrusion and the damage which would re-

sult from the wet conditions within the exterior walls of the Property." Thies alleged: (1) the Geigers' actions in actively and intentionally concealing the water and mold problems constituted actual fraud; (2) the Geigers' failure to disclose the actual condition of the house, which was known to them or should have been known to them, constituted constructive fraud; and (3) the Geigers' actions in knowingly misleading Thies into purchasing the house constituted consumer fraud under N.D.C.C. ch. 51–15.

[¶ 4] The Geigers denied all knowledge of the mold and all allegations of fraud, and they requested coverage by Grinnell Mutual for Thies' claims. Grinnell Mutual agreed to defend the Geigers in Thies' action, subject to a reservation of rights. Grinnell Mutual then brought this declaratory judgment action against the Geigers and Thies, seeking a determination that it was not obligated to provide coverage to the Geigers for Thies' action and that it had no duty to defend the Geigers in that action. The district court, relying on *Friendship Homes, Inc. v. American State Ins. Co.*, 450 N.W.2d 778 (N.D.1990), granted Grinnell Mutual summary judgment, concluding Thies' alleged injuries did not constitute an occurrence or accident while Grinnell Mutual's policy with the Geigers was in effect. The court concluded Grinnell Mutual was not obligated to provide coverage for Thies' alleged injuries or to defend the Geigers.

## II

[¶ 5] Summary judgment is a procedural device for promptly resolving a controversy on the merits without a trial if either party is entitled to judgment as a matter of law, and if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts would not alter the result. *Grinnell Mut. Reinsurance Co. v. Lynne*, 2004 ND 166, ¶ 9, 686 N.W.2d 118. A party moving for summary judgment has the burden of proving there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Witzke v. City of Bismarck*, 2006 ND 160, ¶ 7, 718 N.W.2d 586. In considering a motion for summary judgment, a court must view the evidence in the light most favorable to the party opposing the motion and must give that party the benefit of all favorable inferences that reasonably can be drawn from the evidence. *Id.* Whether a district court properly granted summary judgment is a question of law that we review de novo on the record. *Ernst v. Acuity*, 2005 ND 179, ¶ 7, 704 N.W.2d 869.

## III

[¶ 6] The Geigers argue the district court erred in granting summary judgment for Grinnell Mutual because an "occurrence" took place while the policy was in effect. The Geigers argue they may be liable in Thies' action if they negligently failed to discover and disclose mold in the house and negligence falls within the policy's broad definition of "occurrence." They thus claim Grinnell Mutual has a duty to defend them because there is a possibility of coverage for some of Thies' claims.

[¶ 7] The issues raised in this appeal involve the interpretation of Grinnell Mutual's insurance contract with the Geigers. Interpretation of an insurance contract is a question of law fully reviewable on appeal. *Fisher v. American Family Mut. Ins. Co.*, 1998 ND 109, ¶ 5, 579 N.W.2d 599. We independently examine and construe an insurance contract to determine whether there is coverage. *Id.* In *State v. North Dakota State Univ.*, 2005 ND 75, ¶ 12, 694 N.W.2d 225 (quoting *Zie-*

*gelmann v. TMG Life Ins. Co.*, 2000 ND 55, ¶ 6, 607 N.W.2d 898), we summarized our standards for construing an insurance contract:

> Our goal when interpreting insurance policies, as when construing other contracts, is to give effect to the mutual intention of the parties as it existed at the time of contracting. We look first to the language of the insurance contract, and if the policy language is clear on its face, there is no room for construction. "If coverage hinges on an undefined term, we apply the plain, ordinary meaning of the term in interpreting the contract." While we regard insurance policies as adhesion contracts and resolve ambiguities in favor of the insured, we will not rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage. We will not strain the definition of an undefined term to provide coverage for the insured. We construe insurance contracts as a whole to give meaning and effect to each clause, if possible. The whole of a contract is to be taken together to give effect to every part, and each clause is to help interpret the others.

[¶ 8] Under Section I of the insurance policy, Hartland Mutual provided "Property Coverages" to the Geigers for direct physical loss to the described property under coverages for "dwelling," "other structures," and "personal property" for any enumerated peril, unless the loss was excluded under listed exclusions. Under Section II of the insurance policy, Grinnell Mutual provided "Personal Liability Coverages" to the Geigers, and the parties do not dispute the issues in this case involve that section of the policy. Under that section, Grinnell Mutual agreed to "pay compensatory damages for which an 'insured' becomes legally liable as a result of 'bodily injury' or 'property damage' caused by an 'occurrence' to which [the personal liability] coverage applies." The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in: a. 'Bodily injury'; or b. 'Property damage.' " The policy defines "bodily injury" to mean "bodily harm, sickness, or disease sustained by a person, including resulting death," and to also include "mental or physical anguish, pain, or suffering, but only if accompanied by physical symptoms." The policy defines "property damage" to mean "physical injury to or destruction of tangible property," and to "not include loss of use unless the property has been physically injured or destroyed."

[¶ 9] Relying on *Kief Farmers Coop. Elevator Co. v. Farmland Mut. Ins. Co.*, 534 N.W.2d 28 (N.D.1995), the Geigers argue an "occurrence" is determined by when damage to the property occurs, not when the damage is discovered, and there are disputed factual issues in this case about whether any damage to the house took place while Grinnell Mutual's policy with the Geigers was in effect. The Geigers argue *Friendship Homes*, 450 N.W.2d 778, does not support a denial of coverage in this case, and the district court misinterpreted and misapplied that case, because the court erroneously focused on the date the mold was discovered, rather than when the mold accumulated.

[¶ 10] Relying on *Friendship Homes*, Grinnell Mutual responds there was no occurrence while its policy with the Geigers was in effect because there were no damages to Thies on her third-party claim against the Geigers during the policy period. Grinnell Mutual argues *Kief Farmers Coop.* is not controlling because that case involved a first-party claim, and this action involves a third-party claim by Thies against the Geigers.

[¶ 11] In *Friendship Homes,* 450 N.W.2d at 778, a fireplace installer negligently installed a fireplace in a building in 1984. The owner of the building damaged by a 1987 fire caused by the negligently installed fireplace sued the fireplace installer's liability insurer for damages recovered by the owner in a default judgment against the installer. *Id.* The installer's liability policy provided coverage for an occurrence which resulted in bodily injury or property damage and defined "property damage" as "physical injury to or destruction of tangible property *which occurs during the policy period." Id.* at 779. This Court recognized although the installer's liability policy was in effect when the fireplace was negligently installed, the policy had been cancelled by the time of the fire. *Id.* at 779–80. We said the policy language was clear and unambiguous and only provided coverage for property damage occurring during the policy period. *Id.* We said the "occurrence" took place in 1987, on the date of the damages caused by the fire rather than the date of the wrongful or negligent act, and the occurrence thus took place after the policy had been cancelled. *Id.* at 780. We followed "the well-settled rule that the time of the occurrence of an accident, within the meaning of a liability indemnity policy, is not the time when the wrongful act was committed, but the time when the complaining party was actually damaged." *Id.* We also rejected the property owner's alternative argument that property damage, within the meaning of the policy, occurred when the fireplace was negligently installed. *Id.* at 780–81.

[¶ 12] In *Kief Farmers Coop.,* 534 N.W.2d at 30, an insured, Kief Farmers Cooperative, sued its insurer, Farmland Mutual, for property damage and lost business income from improperly installed "wall side discharge flume hoods" at the insured's grain storage bin. The wall side discharge flume hoods were installed in 1985, and the system was used once, in 1988; however, the insured's employees did not notice any damage to the grain storage bin until 1992. *Id.* The insured's expert opined the 1988 use immediately damaged the grain storage bin. *Id.* Farmland Mutual provided continuous property, casualty, and liability coverage to Kief Farmers Cooperative from July 1, 1984, through August 1, 1991, and another insurer was providing coverage when the damage was discovered in 1992. *Id.* at 30–31.

[¶ 13] Kief Farmers Cooperative sued Farmland Mutual, claiming the loss and damage occurred while Farmland Mutual's policy was in effect and the loss and damage were caused by covered perils. *Id.* at 31. The district court granted Farmland Mutual summary judgment, concluding the policy did not provide coverage for an occurrence or accident that began during the policy period but did not result in a loss until after coverage ended. *Id.* The district court said coverage was triggered when the property damage became known to the victim or property owner. *Id.*

[¶ 14] This Court reversed the district court and remanded for further proceedings. *Id.* at 30, 36. We discussed the different analytical theories in third-party liability contexts for deciding when loss or damage occurs for purposes of triggering coverage where the manifestation of an injury-causing condition is delayed to a later date. *Id.* at 32–33. We also noted the difference between first-party property insurance and third-party liability insurance, stating "[a] third-party liability insurance policy provides coverage for the insured's liability to another in which the insurer generally assumes a contractual duty to pay judgments recovered against the insured arising from the insured's negligence," while "[a] first-party property insurance policy provides coverage for loss

or damage sustained by the insured in which the insurer usually promises to pay money to the insured upon the happening of the risk insured against." *Id.* at 32–33 n. 3 and 4. *See* 1 Eric Mills Holmes and Mark S. Rhodes, *Appleman on Insurance* §§ 3.2 and 3.3 (2nd ed.1996) ("[i]f the insurer's performance of its duty to pay runs directly to the insured for indemnifying the insured's direct loss, then the insurance classification is called 'first-party insurance,' " and "[l]iability insurance is customarily described and classified as third-party insurance because the liability insurer's duty to pay runs not directly to the insured but directly (on the insured's behalf) to a third-party claimant who is injured by the insured's conduct").

[¶ 15] We rejected Kief Farmers Cooperative's claim that we had adopted the injury-in-fact rule as a trigger for insurance claims in *Friendship Homes,* and we distinguished that case because it involved a third-party liability policy rather than a first-party claim. 534 N.W.2d at 33. We also rejected Farmland Mutual's reliance on the "manifestation rule" in first-party property insurance contexts because that rule "stretch[ed] the policy language too far." *Id.* at 34–36. Rather, we examined the language of the policy itself and the nature of the loss to determine the appropriate trigger. *Id.* at 35–36. Relying on the specific policy language in that case, we concluded that language triggered coverage for a first-party claim if a new but undisclosed loss or damage commenced during the policy period, regardless of when the loss or damage became manifest:

The policy in this case covers "loss or damage commencing … [d]uring the policy period." "Commence" means to "begin, start, originate." As such, if property loss or damage begins during the policy period, coverage is triggered. There is no language which purports to condition, limit, or connect the commencement of property loss or damage to when that damage was discovered. The policy language does not even hint that property damage must be known to anyone in order to trigger coverage, or that property damage does not exist unless someone knows about it.

. . . .

The language used here most closely approximates the language of an "occurrence" policy in a third-party liability context. Generally, an "occurrence" policy provides coverage if the event insured against takes place within the policy period, regardless of when the injured party makes a claim. On the other hand, a "claims made" or "discovery" policy provides coverage only if a claim arising from a hazard insured against is presented during the policy period, thus making the presentation of the claim the most significant factor in the triggering of coverage.

"Claims made" or "discovery" coverage was designed to limit, and therefore to more accurately predict, a carrier's risk and exposure and permits the carrier to establish reserves without regard to inflation or other future economic and legal developments, resulting in lower premiums than are charged for an "occurrence" policy. Several courts have recognized that interpreting an "occurrence" policy to provide coverage only when the injury or damage becomes manifest during the policy period unfairly transforms the more expensive "occurrence" policy into a cheaper "claims made" policy.

*Id.* at 35–36 (citations omitted).

[¶ 16] Although *Friendship Homes* involved a third-party claim and *Kief Farmers Coop.* involved a first-party claim, a common thread in both cases, as in all insurance contract interpretation cases, is

that this Court construed the specific language of the insurance contracts to determine and give effect to the mutual intention of the parties. *Kief Farmers Coop.*, 534 N.W.2d at 35–36; *Friendship Homes*, 450 N.W.2d at 779–81.

[¶ 17] This case involves a third-party liability claim which requires Grinnell Mutual to "pay compensatory damages for which an 'insured' becomes legally liable as a result of 'bodily injury' or 'property damage' caused by an 'occurrence.' " The plain language of the policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, *during the policy period*," in "bodily injury" or "property damage." (Emphasis added.)

[¶ 18] In *Friendship Homes*, 450 N.W.2d at 779–80, in the context of a third-party claim, we construed similar policy language requiring damage to "occur[ ] during the policy period" to mean when the complaining party was actually injured. In contrast, the operative language in *Kief Farmers Coop.*, 534 N.W.2d at 35, covered "damage commencing ... [d]uring the policy period." The relevant policy language at issue in this case requires continuous or repeated exposure to harmful conditions to result in bodily injury or property damage "during the policy period" and is controlled by the interpretation of similar language in *Friendship Homes*. That language supports a conclusion that, in this third-party liability case, the occurrence happened when the complaining party, Thies, was actually damaged, rather than when any mold may have accumulated. The Geigers argument that there is coverage because the mold may have accumulated during the policy period would require an extension of this Court's decision in *Friendship Homes* beyond the similar plain language at issue in that case and in this case.

[¶ 19] We conclude the nature of this case as a third-party liability claim and our decision in *Friendship Homes* control the disposition of the Geigers' claims. We therefore conclude the district court did not err in deciding the claimed occurrence did not take place while Grinnell Mutual's liability policy with the Geigers was in effect and in declaring that Grinnell Mutual was not obligated to provide the Geigers with coverage for Thies' third-party claim.

## IV

[¶ 20] We affirm the summary judgment.

[¶ 21] GERALD W. VANDEWALLE, C.J., BRUCE BOHLMAN, S.J., DALE V. SANDSTROM, DANIEL J. CROTHERS, and MARY MUEHLEN MARING, JJ., concur.

[¶ 22] The Honorable BRUCE E. BOHLMAN, S.J., sitting in place of KAPSNER, J., disqualified.