Filed 10/18/11 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2011 ND 197

Chase Wisness, Plaintiff and Appellant

v.

Nodak Mutual Insurance 

Company and Eric Mogen, Defendants and Appellees

No. 20100401

Appeal from the District Court of McKenzie County, Northwest Judicial District, the Honorable David W. Nelson, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Ariston Edward Johnson (argued),116 North 2nd Street, P.O. Box 955, Bismarck, ND 58502-0955, and Dennis Edward Johnson (on brief), 109 5th Street SW, P.O. Box 1260, Watford City, ND 58853-1260, for plaintiff and appellant.

Scott Kenneth Porsborg (argued), 122 East Broadway Avenue, P.O. Box 460, Bismarck, ND 58502-0460, for defendants and appellees.

Wisness v. Nodak Mutual Ins. Co.

No. 20100401

Crothers, Justice.

[¶1] Chase Wisness (“Wisness”) appeals the district court summary judgment in favor of Nodak Mutual Insurance Company (“Nodak”) finding the Farm and Ranch Excess Liability Policy did not provide coverage for his claim.  Wisness argues the district court erred by finding the insurance policy did not provide underinsured motorist coverage.  We affirm.

I

[¶2] On June 1, 2007, Wisness was a passenger in a vehicle driven by an unrelated third party.  An accident occurred, and Wisness was injured and is now a paraplegic.  At the time of the accident, Milo Wisness, Wisness’s father, owned a Nodak Mutual automobile insurance policy with underinsured motorist limits of $500,000.  Milo Wisness also owned a Farm and Ranch Excess Liability Policy issued by Nodak.  Wisness settled with Nodak for underinsured limits on the automobile policy and reserved the right to pursue a claim under the excess liability policy.

[¶3] On February 19, 2010, Wisness sued, alleging that Nodak wrongfully denied his claim under his excess liability policy because the policy provided underinsured motorist coverage, that Nodak used bad faith when denying the claim and that Eric Mogen, Milo Wisness’s insurance agent, negligently counseled Milo Wisness about what insurance policy to buy.  Nodak and Mogen denied the allegations.

[¶4] On May 12, 2010, Wisness moved for partial summary judgment, asking the court to declare coverage existed for his claim.  Nodak resisted Wisness’s motion and moved for summary judgment in its favor.  A hearing on the summary judgment motions was held on September 1, 2010.  On October 21, 2010, the district court issued a memorandum opinion granting summary judgment in favor of Nodak, finding the excess liability insurance policy did not provide coverage for Wisness’s claim and rejecting Wisness’s claim against Mogen.  Judgment was entered awarding Nodak its costs and dismissing Wisness’s claim with prejudice.  Wisness appeals the portion of the district court’s judgment determining the excess liability insurance policy did not provide coverage for his claim.

II

[¶5] Wisness argues the district court erred by granting summary judgment in favor of Nodak because coverage existed for his claim.  This Court has stated:

“Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law.  A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record.  On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law.  Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.”

Johnson v. Taliaferro
, 2011 ND 34, ¶ 8, 793 N.W.2d 804 (quoting 
Hasper v. Center Mut. Ins. Co.
, 2006 ND 220, ¶ 5, 723 N.W.2d 409).  “Interpretation of an insurance contract is a question of law fully reviewable on appeal.”  
Grinnell Mut. Reinsurance Co. v. Thies
, 2008 ND 164, ¶ 7, 755 N.W.2d 852.  In 
Grinnell Mut. Reinsurance Co.
, this Court explained:

“Our goal when interpreting insurance policies, as when construing other contracts, is to give effect to the mutual intention of the parties as it existed at the time of contracting.  We look first to the language of the insurance contract, and if the policy language is clear on its face, there is no room for construction.  ‘If coverage hinges on an undefined term, we apply the plain, ordinary meaning of the term in interpreting the contract.’  While we regard insurance policies as adhesion contracts and resolve ambiguities in favor of the insured, we will not rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage.  We will not strain the definition of an undefined term to provide coverage for the insured.  We construe insurance contracts as a whole to give meaning and effect to each clause, if possible.  The whole of a contract is to be taken together to give effect to every part, and each clause is to help interpret the others.”

Id.
 (quoting 
State v. North Dakota State Univ.
, 2005 ND 75, ¶ 12, 694 N.W.2d 225).

A

[¶6] Wisness asserts the plain language of the policy provides coverage for his claim.  Nodak argues the policy does not cover the claim because the insuring language in the policy does not provide coverage.  “When interpreting an insurance policy, we look first to the insurance contract itself.”  
Nationwide Mut. Ins. Cos. v. Lagodinski
, 2004 ND 147, ¶ 25, 683 N.W.2d 903 (quoting 
Hanneman v. Cont’l W. Ins. Co.
, 1998 ND 46, ¶ 27, 575 N.W.2d 445).  “Generally, the insuring agreement of an insurance policy should be construed before the exclusions to avoid confusion and error.”  2 Steven Plitt et al., 
Couch on Insurance 3d
 § 22:2 (3d ed. 2010).

[¶7] Wisness asserts the portion of the excess liability policy insuring agreement providing coverage states:

“COVERAGE A.  Bodily Injury and Property Damage Liability

1. Insuring Agreement 

a. We will pay on behalf of the insured for ‘ultimate net loss’ in excess of the ‘retained limit’ because of ‘bodily injury’ or ‘property damage’ to which this insurance applies.”

An “[u]ltimate net loss” is defined in the policy as “the total amount of damages for which the insured is legally liable in payment of ‘bodily injury,’ ‘property damage,’ ‘personal injury,’ or ‘advertising injury.’”

[¶8] The language “pay on behalf of” and “the amount . . . the insured is legally liable in payment” indicate the policy provides only third-party coverage.  
See
 
Kromer v. Reliance Ins. Co.
, 677 A.2d 1224, 1230 (Pa. Super. Ct. 1996), 
aff’d
, 696 A.2d 152 (Pa. 1997) (“[I]t is clear from the language of both policies that they provide third party liability coverage only.  This is evident from the phrase used in both policies: ‘to pay on behalf of the insured . . . sums which the insured is legally obligated to pay.’”) (footnote omitted).  “A third-party liability insurance policy provides coverage for the insured’s liability to another in which the insurer generally assumes a contractual duty to pay judgments recovered against the insured arising from the insured’s negligence.”  
Kief Farmers Co-op. Elevator Co. v. Farmland Mut. Ins. Co.
, 534 N.W.2d 28, 32-33 n.3 (N.D. 1995); 
see also
 
Grinnell Mut. Reinsurance Co.
, 2008 ND 164, ¶ 14, 755 N.W.2d 852 (“[L]iability insurance is customarily described and classified as third-party insurance because the liability insurer’s duty to pay runs not directly to the insured but directly (on the insured’s behalf) to a third-

party claimant who is injured by the insured’s conduct[.]” (quoting 1 Eric Mills Holmes & Mark S. Rhodes, 
Appleman on Insurance
 § 3.3 (2nd ed. 1996))).

[¶9] Wisness’s claim is for underinsured motorist coverage to pay damages resulting from the injuries he sustained in an automobile accident.  Underinsured motorist coverage “[pays] compensatory damages which an insured is legally entitled to collect for bodily injury, sickness, disease, including death resulting therefrom, of such insured, from the owner or operator of an underinsured motor vehicle arising out of the ownership, maintenance, or use of such underinsured motor vehicle.”  N.D.C.C. § 26.1-40-15.3(1).  “Underinsured motorist insurance is a first party coverage arrangement that entitles an insured to compensation for injuries from the insurer.”  3 Alan I. Widiss & Jeffrey E. Thomas, 
Uninsured and Underinsured Motorist Insurance
 § 32.1 n.1 (3d ed. 2005).

[¶10] Wisness collected underinsured motorist benefits from the underlying automobile policy and is currently trying to collect additional underinsured motorist benefits from the excess liability policy.  Uninsured and underinsured motorist insurance coverages are controlled by N.D.C.C. §§ 26.1-40-15.1 to 26.1-40-15.7.  An excess liability policy is not required to cover the same risks as the underlying uninsured or underinsured policy.  N.D.C.C. § 26.1-40-15.7(2) (“No insurer is required to offer, provide, or make available coverage conforming to sections 26.1-40-15.1 through 26.1-40-15.7 in connection with any excess policy, umbrella policy, or any other policy which does not provide primary motor vehicle insurance for liabilities arising out of the ownership, maintenance, operation, or use of a specifically insured motor vehicle.”).  As a result, an excess coverage policy must be read on its own to determine if uninsured motorist coverage exists.  
See
 
Farmers Union Mut. Ins. Co. v. Associated Elec. and Gas Ins. Servs. Ltd.
, 2007 ND 135, ¶ 17, 737 N.W.2d 253 (“An excess insurance policy serves a different purpose than a primary policy.” (quoting 
Fuller-Austin Insulation Co. v. Highlands Ins. Co.
, 38 Cal. Rptr. 3d 716, 722 n.1 (2006))); 4 Jeffrey E. Thomas & Aviva Abramovsky, 
New Appleman on Insurance Law Library Edition
 § 24.02[2][c] (2011) (“A stand alone [excess] policy relies exclusively on its own insuring agreement, conditions, definitions and exclusions to grant and limit coverage.”).

[¶11] Reading the terms of the insurance contract as we must, the policy language relied on by Wisness covers damages an insured becomes legally liable to pay.  However, Wisness is making a first-party claim for underinsured motorist benefits rather than a claim for damages the insured is legally liable in payment.  Thus, plain language of the excess liability insurance policy does not provide coverage for Wisness’s claim because his claim is not covered in the insuring agreement.

B

[¶12] Wisness urges us to find the policy’s underinsured motorist exclusion creates an ambiguity that must be interpreted to provide coverage.  Nodak asserts the policy is unambiguous.

[¶13] “Ambiguity in [policy] language exists when the language can be reasonably construed as having at least two alternative meanings[.]”  
Emp’rs Reinsurance Corp. v. Landmark
, 547 N.W.2d 527, 532 (N.D. 1996) (quoting 
Kief Farmers Co-op. Elevator
, 534 N.W.2d at 32).  Regarding ambiguity of insurance policy exclusions, we have further stated:

“‘Exclusions from coverage in an insurance policy must be clear and explicit and are strictly construed against the insurer.’  
Grinnell Mut. Reinsurance Co. v. Center Mut. Ins. Co.
, 2003 ND 50, ¶ 10, 658 N.W.2d 363 (citing 
Western Nat’l Mut. Ins. Co. v. Univ. of North Dakota
, 2002 ND 63, ¶ 7, 643 N.W.2d 4).  Although this Court construes exclusionary provisions strictly, we do not automatically construe every insurance exclusion provision against an insurer and in favor of coverage for the insured.  This Court will not rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage.  
Northwest G.F. Mut. Ins. Co. v. Norgard
, 518 N.W.2d 179, 181 (N.D. 1994).  The insured still must prove he falls within an exception to the exclusion in order to benefit from coverage.”

Nationwide Mut. Ins. Cos.
, 2004 ND 147, ¶ 9, 683 N.W.2d 903.

[¶14] The exclusion Wisness relies on states: 

“This insurance does not apply to:

. . . .

d. Liability imposed on the insured or the insured’s insurer, under any of the following laws:

. . . .

(2) Any uninsured motorists, underinsured motorists, or automobile no-fault or first party ‘bodily injury’ or ‘property damage’ law[.]”

Wisness argues the exclusion creates an ambiguity because an exclusion in an insurance policy must remove coverage that existed in the first place.  Nodak asserts we should follow a Wisconsin Court of Appeals ruling that an exclusion does not create insurance coverage.  
See
 
Muehlenbein v. West Bend Mut. Ins. Co.
, 499 N.W.2d 233 (Wis. Ct. App. 1993).

[¶15] We first note Wisness narrowly contends in this part of his argument that Nodak’s Exclusion 2d(2) creates an ambiguity requiring recognition of coverage under the excess policy where coverage otherwise does not exist.  He does not allege his claim falls within an exception to the exclusion, thereby requiring coverage.  
See
 
Nationwide Mut. Ins. Cos.
, 2004 ND 147, ¶ 9, 683 N.W.2d 903.  Nor does he argue the exclusion itself is ambiguous or that conflicting exclusions create an ambiguity mandating coverage of his underinsured motorist claim under Nodak’s policy.  
See
 
Fisher v. American Family Mut. Ins. Co.
, 1998 ND 109, ¶ 10, 579 N.W.2d 599 (holding policy exclusion was ambiguous because it supported interpretations imposing or not imposing liability); 
Aid Ins. Servs., Inc. v. Geiger
, 294 N.W.2d 411, 414-15 (N.D. 1980) (holding policy ambiguity exists because of conflict between exclusions).

[¶16] Consistent with our rules for interpretation of insurance policies, one noted treatise comments:

“The order of analysis employed by courts is to first examine the coverages provided by the policy.  If and only if a coverage provision applies to the harm at issue will the court then examine the policy’s exclusions and limitations of coverage.  An exclusionary provision, or the absence of one, cannot be read to provide coverage that does not otherwise exist.  Similarly, non-operative clauses, such as a policy’s ‘Whereas’ clauses, cannot produce coverage that is not provided by the policy’s operative coverage provisions.”

1 Robert D. Goodman, John C. Dockery & Matthew S. Hackell, 
New Appleman Law of Liability Insurance
 § 1.04[1] (2d ed. 2011) (citations omitted).  
See also
 
Sony Computer Entm’t Am., Inc. v. Am. Home Assurance Co.
, 532 F.3d 1007, 1017 (9th Cir. 2008) (stating coverage analysis considers “whether the policy’s insuring agreements create coverage for the disputed claim.  If coverage exists, then the court considers whether any exclusions apply.  If coverage does not exist, the inquiry ends.  The exclusions are no longer part of the analysis because ‘they cannot expand the basic coverage granted in the insuring agreement.’” (citation omitted)); 
Jaderborg ex rel. Bye v. Am. Family Mut. Ins. Co.
, 620 N.W.2d 468, 470 (Wis. Ct. App. 2000) (concluding underinsured motorist exclusion prohibits coverage and does not create coverage); 
Stanford Ranch, Inc. v. Md. Cas. Co.
, 89 F.3d 618, 627 (9th Cir. 1996) (concluding “exclusion cannot act as an additional grant or extension of coverage” (citations omitted)); 
Muehlenbein
, 499 N.W.2d at 237 (determining there exists “no proscription against an insurer using an endorsement to protect itself from potential arguments about what is covered”); 
Continental Cas. Co. v. Pittsburgh Corning Corp.
, 917 F.2d 297, 300 (7th Cir. 1990) (holding “[T]here is one principle of contract interpretation that we have employed implicitly, and it may be useful to bring it out into the open.  That is the principle that an exclusion from insurance coverage cannot create coverage.”(citations omitted)).

[¶17] We agree with the 
Appleman
 treatise and the subsequently cited cases.  Here, the Farm and Ranch Excess Liability Policy provides only third-party liability coverage.  The words underinsured motorist coverage appear only in an exclusion to the policy.  The exclusion does not make the policy ambiguous, nor does the exclusion provide coverage where coverage does not otherwise exist.  We therefore reject Wisness’s claim Exclusion 2d(2) creates an ambiguity or that it provides underinsured motorist coverage under Nodak’s excess liability policy.

C

[¶18] Arguments were presented about an endorsement to Nodak’s 2007 Farm and Ranch Excess Liability Policy.  The 2007 policy was issued by Nodak after the events giving rise to this lawsuit.  The parties agree Milo Wisness was not covered by the 2007 policy when the claim arose.  Nor was the 2007 policy in the record.  However, the 2007 policy is not relevant because we do not look outside the language in the policy at issue to find an ambiguity.  
See
 
Dundee Mut. Ins. Co. v. Marifjeren
, 1998 ND 222, ¶ 9, 587 N.W.2d 191 (“We look first to the language of the insurance policy, and if the policy is clear on its face, our inquiry is at an end.”).

III

[¶19] The district court judgment finding the insurance policy does not provide coverage for Wisness’s claim is affirmed.

[¶20] Daniel J. Crothers

Dale V. Sandstrom

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J. 
Maring, Justice, concurring in the result.

[¶21] I concur in the result reached by the majority.  I am of the opinion the exclusion in Wisness’s excess liability policy, stating the insurance does not apply to “[l]iability imposed on the insured or the insured’s insurer, under . . . [a]ny uninsured motorists, underinsured motorists, or automobile no-fault or first party ‘bodily injury’ or ‘property damage,’” is unambiguous and clearly removes coverage for uninsured and underinsured motorist benefits.  I, therefore, agree with the majority that there is no coverage under this policy for an underinsured motorist claim.  I write separately, however, only to point out that an excess policy, umbrella policy or any other policy which does not provide primary insurance coverage can provide underinsured motorist coverage by its terms or through endorsements.  Each policy must be read on its own to determine if underinsured coverage is provided.  The fact that the policy generally is construed as a “third party” liability policy does not end the inquiry.

[¶22] We have consistently held that “insurance policies are to be interpreted as a whole so as to give effect to all of the provisions of the policy if reasonably practicable.”  
Haugen v. Auto-Owners Ins. Co.
, 191 N.W.2d 274, 280 (N.D. 1971); 
see also
 
Nationwide Mut. Ins. Cos. v. Lagodinski
, 2004 ND 147, ¶ 8, 683 N.W.2d 903 (quoting 
Ziegelmann v. TMG Life Ins. Co.
, 2000 ND 55, ¶ 6, 607 N.W.2d 898) (“‘We construe insurance contracts as a whole to give meaning and effect to each clause, if possible.”’); N.D.C.C. § 9-07-06 (providing contracts are to be interpreted as a whole).  We have further explained that “‘[t]he whole of a[n] [insurance] contract is to be taken together to give effect to every part, and each clause is to help interpret the others.’”  
Lagodinski
, at ¶ 8 (quoting 
Ziegelmann
, at ¶ 6).  We have further stated that an endorsement controls if there is any uncertainty between the policy and the endorsement.  
Nodak Mutual Ins. Co. v. Heim
, 1997 ND 36, ¶ 15, 559 N.W.2d 846.  Accordingly, rather than interpreting the insuring agreement in isolation, a reviewing court must look at the insurance policy as a whole, giving effect to each part of the policy, including the insuring agreement of the policy, any exclusions within the policy, and any endorsements to the policy.  
See
 
id.
; 
see also
 2 Steven Plitt et al., 
Couch on Insurance
 § 21:19 (3d ed. 2010) (“Coverage of an insurance contract cannot be analyzed in a vacuum; the policy must be construed in its entirety, with each clause interpreted in relation to others contained therein.”).

[¶23] The function of the insuring agreement is to provide what kinds of losses are covered under the policy.  
See
 1 Jeffrey E. Thomas & Francis J. Mootz, III, 
New Appleman on Insurance Law
 § 1.07[5] (2010) (defining insuring agreement).  The function of an exclusion, on the other hand, is to eliminate coverage initially provided by the insuring agreement.  
See
 
id.
 § 1.07[6] (explaining an exclusion removes coverage otherwise provided under the policy’s insuring agreement).  Therefore, an exclusion takes away coverage granted by the insuring agreement, but an exclusion cannot create or expand coverage.  An endorsement is a document attached to a policy that changes the coverage provided by the policy and can add coverage, subtract coverage, or otherwise modify the policy.  
See
 
id.
 § 1.07[8].  Therefore, to look only to the insuring agreement and not to the entire policy to interpret coverage is error.

[¶24] The majority cites 
Muehlenbein v. West Bend Mut. Ins. Co.
, 499 N.W.2d 233 (Wis. Ct. App. 1993), for the proposition the underinsured-motorist-benefits exclusion in Wisness’s excess liability policy serves to merely clarify that there is no coverage and for the proposition that the excess policy only provides third-party liability coverage.  The majority’s reliance on 
Muehlenbein
 is misplaced.  In 
Muehlenbein
, the Wisconsin Court of Appeals was interpreting an endorsement attached to a commercial excess liability insurance policy that contained an exclusion of coverage, not an exclusion provision within the policy.  499 N.W.2d at 235.  An endorsement can limit or subtract coverage initially provided by the insuring agreement and, unlike an exclusion, can also add coverage for risks not covered by the original policy or expand the coverage initially granted by the policy.  
Appleman
, § 1.07[8].  Additionally, an endorsement may modify an insurance policy by adding or removing exclusions listed within the policy.  
Id.
  Because an exclusion within an insurance policy serves a different function than does an endorsement to an insurance policy, I cannot agree with the majority’s application of the 
Muehlenbein
 reasoning to the legal issue in this case.

[¶25] The majority also relies on 
Jaderborg v. Am. Family Mut. Ins. Co.
, 620 N.W.2d 468 (Wisc. Ct. App. 2000).  The Wisconsin Court of Appeals interpreted three policy provisions in 
Jaderborg
:  an “exclusion,” an “other insurance” clause, and an “Intra-Insured” clause.  620 N.W.2d at 470-71.  With regard to the exclusion, it held:  “According to the clear and unambiguous terms of the underinsured motorist exclusion, no underinsured coverage is afforded without the necessary endorsement.”  
Id.
 at 470.  The exclusion in 
Jaderborg
 is worded differently than the exclusion in Wisness’s policy.  Therefore, I do not find the 
Jaderborg
 decision provides any support for the conclusions of the majority opinion.

[¶26] “Precedent” has been defined as “[a] decided case that furnishes a basis for determining later cases involving similar facts or issues.”  
Black’s Law Dictionary
 1214 (8th ed. 2004).  Thus, in insurance policy interpretation cases, the role of precedent depends largely on whether the language of the insurance policies and the underlying facts in each case are similar in nature.  If they are, then the law should be applied the same.  If the policies and underlying facts are different, however, then a prior decision cannot be binding.  The policies and underlying facts in 
Muehlenbein
 and 
Jaderborg
 differ from those presented here.  Therefore, neither should control the resolution of the legal issue in this case, which I believe to be much different than the legal issue addressed by the majority.  I am of the opinion the dispositive issue on appeal is whether the language of the underinsured-motorist-benefits exclusion in Wisness’s excess liability policy is ambiguous.  Because I find no ambiguity in the language of the exclusion and no endorsement adding coverage, I agree with the result of the majority opinion that Wisness’s excess liability policy does not provide coverage for underinsured motorist benefits.

[¶27] I note that the majority never acknowledges that there is a split of authority on this coverage issue and that other jurisdictions have concluded umbrella/excess policies do provide uninsured or underinsured motorist coverage.  
See generally
 Lisa K. Gregory, Annotation, “
Excess” or “Umbrella” Insurance Policy as Providing Coverage for Accidents with Uninsured or Underinsured Motorists
, 2 A.L.R. 5th 922 (1992) (discussing cases and statutes and the split of authority nationwide).  A number of jurisdictions which have uninsured and underinsured statutes requiring that no motor vehicle liability policy may be issued unless uninsured and underinsured coverage is provided therein in limits equal to the limits of liability coverage, have concluded that because an excess policy includes motor vehicle liability coverage for automobile accidents, an excess policy must comply with the terms of the state’s statutes.  
Ins. Co. of Penn. v. Johnson
, 987 A.2d 276, 284-85 (Vt. 2009) (discussing the split of authority and holding Vermont statutes require that excess policies provide uninsured and underinsured coverage).  Underinsured motorist coverage is governed by statute in North Dakota.  
See
 N.D.C.C. §§ 26.1-40-15.1 through 26.1-40-15.7.  The majority does note that N.D.C.C. § 26.1-40-15.7 states:  

No insurer is required to offer, provide, or make available coverage conforming to sections 26.1-40-15.1 through 26.1-40-15.7 in connection with any excess policy, umbrella policy, or any other policy which does not provide primary motor vehicle insurance for liabilities arising out of the ownership, maintenance, operation, or use of a specifically insured motor vehicle.

However, an insurance policy can grant more coverage by its terms, but not less than required by statute.  
Sandberg v. American Family Ins.
, 2006 ND 198, ¶ 8, 722 N.W.2d 359.

[¶28] Finally, I also do not agree with the majority’s analysis regarding the endorsement adding excess underinsured motorist coverage offered by Nodak Mutual in 2007 to its insureds.  The accident in this case occurred in June 2007.  The endorsement was first available in January 2007.  A copy of this endorsement, Endorsement EL-76, was provided by Nodak Mutual in a letter to Wisness’s attorney as part of Nodak Mutual’s reason for why Wisness’s policy had no underinsured motorist coverage.  Nodak explains in the letter that there was no uninsured motorist or underinsured motorist coverage because its reinsurance carrier would not accept the risk.  Nodak further explains that after an agreement was finally reached with its reinsurance carrier, Nodak was first able to offer underinsured motorist coverage to Wisness by endorsement on February 27, 2008, the date of renewal of the Wisness policy.  The letter and the enclosed copy of the 2007 endorsement was made part of the record in an affidavit and reply in support of Wisness’s motion for partial summary judgment and in opposition to Nodak Mutual’s cross-motion for summary judgment.  The grounds specified for a denial of coverage are relevant in determining coverage.  
See
 
D.E.M. v. Allickson
, 555 N.W.2d 596, 599-600 (N.D. 1996).  In addition, Nodak’s offer of coverage for a “first party” claim under its excess liability policy, a so-called “third party” liability policy, makes its argument based on “this is only a third party liability policy” questionable.

[¶29] Accordingly, I concur in the result.

[¶30] Mary Muehlen Maring