2013 ND 57

**K & L HOMES, INC., Plaintiff
and Appellant**

v.

**AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
Defendant and Appellee.**

No. 20120060.

Supreme Court of North Dakota.

April 5, 2013.

Troy A. Wolf, Moorhead, MN, for plaintiff and appellant.

Scott D. Jensen, Grand Forks, N.D., for defendant and appellee.

MARING, Justice.

[¶1] K & L Homes, Inc. ("K & L") appeals the trial court's summary judgment declaring no coverage existed under K & L's commercial general liability ("CGL") policy with American Family Mutual Insurance Company ("American Family") for damages awarded against K & L in an underlying action. We conclude there can be an "occurrence" under the CGL policy under the facts of this case. Therefore, we reverse the summary judgment and remand for further proceedings consistent with this opinion.

I

[¶2] K & L commenced this action for declaratory judgment, breach of contract, and bad faith against American Family, seeking a judicial determination that coverage exists under K & L's CGL policy with American Family for the adverse judgment rendered against K & L in an underlying action. *See Leno v. K & L Homes, Inc.*, 2011 ND 171, 803 N.W.2d 543.

[¶3] In the underlying action, the Lenos sought to recover damages for a newly-constructed house they purchased from K & L, the homebuilder. The Lenos had alleged that not long after purchasing the house from K & L, they noticed cracks, unevenness, and shifting. In their action against K & L, the Lenos initially claimed K & L was negligent, had breached the parties' contract, and had breached implied warranties. However, they subsequently abandoned their negligence claim against K & L and proceeded at trial only on the breach of contract and breach of implied warranties claims. The jury found K & L breached their contract or implied warranty with the Lenos and awarded the Lenos

damages. A final judgment was entered against K & L for $254,629.25, and, on appeal, we affirmed. *See Leno,* 2011 ND 171, ¶¶ 1, 27, 803 N.W.2d 543.

[¶ 4] In the underlying action, the Lenos alleged the house suffered damage because of substantial shifting caused by improper footings and inadequately compacted soil under the footings and foundation. In constructing the house, K & L hired Dakota Ready Mix to perform work on the house's footings and foundation. At the relevant time, K & L was insured under the CGL policy issued by American Family. American Family provided K & L with a defense in the underlying action through trial under a reservation of rights. After the adverse judgment, American Family denied coverage under the CGL policy for the damages recovered by the Lenos. K & L commenced this action seeking a determination of the policy's coverage.

[¶ 5] K & L moved for partial summary judgment on its claims for declaratory judgment and breach of contract, and American Family filed a cross-motion for summary judgment. The trial court denied K & L's motion and granted American Family's motion, concluding the deficient work of the excavation subcontractor was not an accident and did not constitute an "occurrence" under the CGL policy. The court concluded the entire house was K & L's work product and the damage to the house caused by the excavation subcontractor's faulty workmanship was not within the initial grant of coverage under the CGL policy. K & L appeals.

## II

[¶ 6] K & L contends the trial court erred in granting American Family summary judgment and concluding the CGL policy did not provide K & L coverage for the adverse judgment in the underlying action.

[¶ 7] Our standard for reviewing summary judgment is well-established: "Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record." *Tibert v. Nodak Mut. Ins.,* 2012 ND 81, ¶ 8, 816 N.W.2d 31 (quoting *Myaer v. Nodak Mut. Ins.,* 2012 ND 21, ¶ 9, 812 N.W.2d 345).

[¶ 8] Interpretation of an insurance contract presents a question of law, fully reviewable on appeal. *Tibert,* 2012 ND 81, ¶ 9, 816 N.W.2d 31; *Wisness v. Nodak Mut. Ins.,* 2011 ND 197, ¶ 5, 806 N.W.2d 146. This Court independently examines and construes the insurance contract to decide whether there is coverage. *Grinnell Mut. Reinsurance v. Thies,* 2008 ND 164, ¶ 7, 755 N.W.2d 852.

"Our goal when interpreting insurance policies, as when construing other contracts, is to give effect to the mutual intention of the parties as it existed at the time of contracting. We look first to the language of the insurance contract, and if the policy language is clear on its face, there is no room for construction. If coverage hinges on an undefined term, we apply the plain, ordinary meaning of the term in interpreting the contract. While we regard insurance policies as adhesion contracts and resolve ambiguities in favor of the insured, we will not rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage. We will not strain the definition of an undefined term to provide coverage for the insured. *We construe insurance contracts as a whole to give meaning and effect to each clause, if possible. The whole of a contract is to be taken together to give effect to every part, and each clause is to help interpret the others.*"
State v. N.D. State Univ., 2005 ND 75, ¶ 12, 694 N.W.2d 225 (emphasis added) (quoting *Ziegelmann v. TMG Life Ins.*, 2000 ND 55, ¶ 6, 607 N.W.2d 898 (citations omitted)). "Exclusions from coverage in an insurance contract must be clear and explicit and are strictly construed against the insurer." *Tibert*, at ¶ 9; *see also Schleuter v. Northern Plains Ins.*, 2009 ND 171, ¶ 8, 772 N.W.2d 879. Although a policy's exclusionary clauses are strictly construed, this Court will not rewrite a contract to impose liability on the insurer when the policy unambiguously precludes coverage. *Tibert*, at ¶ 9; *Schleuter*, at ¶ 8.

[¶ 9] We have explained that in interpreting an insurance policy, we will first examine the coverages provided by the policy before examining a policy's exclusions. *Wisness*, 2011 ND 197, ¶ 16, 806 N.W.2d 146 (quoting Robert D. Goodman,

John C. Dockery & Matthew S. Hackell, 1 *New Appleman Law of Liability Insurance* § 1.04[1] (2d ed.2011)). "If and only if a coverage provision applies to the harm at issue will the court then examine the policy's exclusions and limitations of coverage." An exclusionary provision, or the absence of one, cannot be read to provide coverage that does not otherwise exist." *Wisness*, at ¶ 16. Likewise, although an exception to an exclusion from coverage results in coverage, *Fisher v. American Family Mut. Ins.*, 1998 ND 109, ¶ 6, 579 N.W.2d 599, an exception to an exclusion is incapable of initially providing coverage; rather, an exception may become applicable if, and only if, there is an initial grant of coverage under the policy and the relevant exclusion containing the exception operates to preclude coverage. *American Family Mut. Ins. v. Am. Girl, Inc.*, 268 Wis.2d 16, 673 N.W.2d 65, 73 (2004) (holding "[t]he applicability of an exception will not create coverage if the insuring agreement precludes it or if a separate exclusion applies"); *Sheehan Const. v. Continental Cas. Co.*, 935 N.E.2d 160, 162 (Ind.2010) (holding "it is the initial broad grant of coverage, not the exception to the exclusion, that ultimately creates (or does not create) the coverage sought").

### III

[¶ 10] Under the CGL policy's insuring agreement, American Family is required to "pay those sums that the insured [K & L] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The policy provides that the insurance "applies to 'bodily injury' and 'property damage' only if: (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'" Thus, for coverage to apply under the CGL policy there

must be "property damage" caused by an "occurrence."

[¶ 11] Under the policy, "property damage" includes "[p]hysical injury to tangible property, including all resulting loss of use of that property" and "[l]oss of use of tangible property that is not physically injured." The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The term "accident" is not defined in the policy. We have, however, defined "accident" for purposes of a CGL policy as "happening by chance, unexpectedly taking place, not according to the usual course of things." *Wall v. Pennsylvania Life Ins.*, 274 N.W.2d 208, 216 (N.D.1979).

[¶ 12] The CGL policy at issue contains several exclusions to coverage, including a "your work" exclusion with a "subcontractor exception":

This insurance does not apply to:

. . . .

1. Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

The policy defines "your work" as:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

[¶ 13] K & L argues that the property damage to the house from the excavation subcontractor's faulty workmanship constitutes an "occurrence" under the CGL policy and is within the initial scope of coverage provided by the insuring agreement of the CGL policy, even if the house is considered K & L's work. K & L also argues the policy should be interpreted to give effect to the policy as a whole and the "subcontractor exception" to the "your work" exclusion should apply.

[¶ 14] Whether faulty workmanship of a subcontractor fits within the definition of "occurrence" under a CGL policy has been litigated in a number of jurisdictions. *Sheehan Constr.*, 935 N.E.2d at 167. Currently, the majority of state supreme courts who have decided the issue of whether inadvertent faulty workmanship is an accidental "occurrence" potentially covered under the CGL policy have decided that it can be an "occurrence." *Compare Fejes v. Alaska Ins.*, 984 P.2d 519 (Alaska 1999) (holding there was an "occurrence" and coverage for damages caused by a subcontractor's defective work on a septic system); *United States Fire Ins. v. J.S.U.B., Inc.*, 979 So.2d 871 (Fla.2007) (holding that a subcontractor's defective soil preparation, which was neither expected nor intended from the standpoint of the general contractor, was an "occurrence" under the CGL policy and the structural damage to the completed homes was property damage under the CGL policy); *Sheehan Constr. v. Continental Cas. Co.*, 935 N.E.2d 160, *modified* 938 N.E.2d 685 (Ind. 2010) (on other grounds) (holding that faulty workmanship may constitute an "occurrence" if the resulting damage is an event that occurs without expectation or foresight); *Lee Builders, Inc. v. Farm Bureau Mut. Ins.*, 281 Kan. 844, 137 P.3d 486

(2006) (holding unforeseen and unintended damage from leaking windows installed by an insured's subcontractor was caused by an "occurrence"); *Wanzek Constr., Inc. v. Employers Ins.*, 679 N.W.2d 322 (Minn. 2004) (holding damage to a swimming pool caused by a subcontractor was covered under a CGL policy); *Architex Ass'n, Inc. v. Scottsdale Ins.*, 27 So.3d 1148 (Miss. 2010) (holding the term "occurrence" cannot be construed in such a manner as to preclude coverage for unexpected or unintended "property damage" resulting from negligent acts or conduct of a subcontractor unless otherwise excluded); *Revelation Indus. v. St. Paul Fire & Marine Ins.*, 350 Mont. 184, 206 P.3d 919 (2009) (holding property damage to an insured's products or completed work done for the insured by a subcontractor is an "accident" and the CGL policy provides coverage to the insured); *McKellar Dev. v. Northern Ins.*, 108 Nev. 729, 837 P.2d 858 (1992) (holding soil compaction performed by subcontractors, which caused damage to buildings built by an insured, was an "occurrence" and covered under the Broad Form Property Damage endorsement); *High Country Assocs. v. N.H. Ins.*, 139 N.H. 39, 648 A.2d 474 (1994) (holding that actual damage to the structure of the condominium units by continuous exposure to moisture from defective construction resulted in an "occurrence" covered by the CGL policy); *Auto Owners Ins. v. Newman*, 385 S.C. 187, 684 S.E.2d 541 (2009) (holding that a subcontractor's negligent application of stucco to a home resulted in an "occurrence" under the CGL policy's grant of coverage for the resulting progressive property damage to the home), *overruled by Crossmann Communities of N.C., Inc. v. Harleysville Mut. Ins.*, No. 26909, 2011 WL 93716, at *1, 2011 S.C. LEXIS 2, at *1 (S.C. Jan. 7, 2011), *withdrawn and substituted by* 395 S.C. 40, 717 S.E.2d 589 (2011) (adhering to the result in *Newman* ); *Cor-*

*ner Constr. v. United States Fid. and Guar.*, 638 N.W.2d 887 (S.D.2002) (holding that the CGL policy provided coverage for a general contractor's liability for property damage to the building as a result of the subcontractor's faulty workmanship, which was an "accident" resulting in property damage); *Travelers Indem. Co. of America v. Moore & Assocs., Inc.*, 216 S.W.3d 302 (Tenn.2007) (holding that defective workmanship may constitute an "occurrence" under a CGL policy; damages caused by faulty workmanship are "property damage" and "damages resulting from the faulty workmanship of a subcontractor are not excluded from coverage"); *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1 (Tex.2007) (holding that a general contractor's defective construction or faulty workmanship in building a house foundation is an "occurrence" within the meaning of the CGL policy); *American Family Mut. Ins. v. American Girl, Inc.*, 268 Wis.2d 16, 673 N.W.2d 65 (2004) (holding that damage to a warehouse caused by soil settlement, which occurred because of a subcontractor's faulty site-preparation advice was accidental, not intentional or anticipated, and was an "occurrence" within the meaning of the CGL policies); *with Town & Country Prop. v. Amerisure Ins.*, No. 1100009 and 1100072, 2011 WL 5009777, *1 (Ala. Oct. 21, 2011) (holding a subcontractor's faulty workmanship, standing alone, is not an "occurrence" under the CGL policy, but may be an "occurrence" if the faulty workmanship exposes personal property or other parts of the structure to continuous and repeated exposure to some other general harmful condition); *Essex Ins. v. Holder*, 370 Ark. 465, 261 S.W.3d 456 (2008) (holding defective or incomplete construction, standing alone, that results in damage only to the work product itself is not an "occurrence" under the CGL policy); *Cincinnati Ins. v. Motorists Mut. Ins.*, 306 S.W.3d 69 (Ky.

2010) (holding a claim for poor workmanship in building a home does not involve the fortuity required to constitute an accident and is therefore not an "occurrence"); *Oak Crest Constr. v. Austin Mut. Ins.*, 329 Or. 620, 998 P.2d 1254 (2000) (holding costs for the repair of a subcontractor's deficient work did not arise from an accident under the CGL policy, but leaving open the question when there is damage to other property); *Kvaerner Metals v. Commercial Union Ins.*, 589 Pa. 317, 908 A.2d 888 (2006) (holding poor workmanship in the construction of a coke battery, resulting in the product not meeting contract specifications and warranties, was not an "occurrence" under the CGL policy language). *See also* J. Randolph Evans & J. Stephen Berry, *New Appleman on Insurance: Current Critical Issues in Insurance Law,* on *Construction Defect Coverage Law: Past, Present, and Future,* § I–Appendix, at 1–31 (December 2008) [hereafter "*New Appleman on Insurance* "].

[¶ 15] The history of the CGL policy demonstrates that the meaning of "occurrence" in the post–1986 CGL policy at issue here includes construction defect claims. The Florida Supreme Court recently addressed "whether a post–1986 standard form commercial general liability policy with products-completed operations hazard coverage, issued to a general contractor, provides coverage when a claim is made against the contractor for damage to the completed project caused by a subcontractor's defective work." *United States Fire Ins.*, 979 So.2d at 877. The question in Florida was the same as the issue here.

[¶ 16] The Florida Supreme Court commenced its analysis by reviewing "The Origin and Evolution of CGL Policies." *United States Fire Ins.*, 979 So.2d at 877–80. The Florida court wrote:

Commercial General Liability policies are designed to protect an insured against certain losses arising out of business operations. The first standard form comprehensive general liability insurance policy was drafted by the insurance industry in 1940. The standard policy was the result of a voluntary effort in the insurance industry to address the misunderstanding, coverage disputes, and litigation that resulted from the unique language used by each liability insurer.

Since 1940, the standard policy has been revised several times. We review these changes because the insuring agreement has been expanded over the years and the exclusions narrowed. With regard to the insuring agreement, the language was expanded from providing coverage only for damages "caused by an accident" to include coverage for damages caused by an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." In [*State Farm Fire & Casualty Co. v.*] *CTC Development Corp.,* [720 So.2d 1072, 1076 (Fla.1998)], we explained that an "occurrence," which is defined as an "accident," encompasses damage that is "neither expected nor intended from the standpoint of the insured."

Like the insuring language, the exclusions in standard CGL policies have been modified over the years. The exclusions that are of significance to our analysis in this case are the "business risk" exclusions, including the "your work" and "your product" exclusions. The 1973 standard CGL policy interpreted in *LaMarche* [*v. Shelby Mutual Ins.*, 390 So.2d 325, 326 (Fla.1980),] contained broad exclusions for damage to "your work" and "your product" stating that the insurance did not apply

(n) to property damage to the named insured's products arising out of such products or any part of such products;

(o) to property damage to work *performed by or on behalf of the named insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

Beginning in 1976, the insured could purchase a Broad Form Property Endorsement. This endorsement replaced exclusion (o), set forth above, and exclusion (k), which excluded damage to property owned by or within the control of the insured. As to exclusion (o), the endorsement replaced it with more specific exclusions and also differentiated between property damage that occurred before and after operations were completed.

. . . .

Thus, with regard to completed operations, the endorsement eliminated the exclusion for "work performed on behalf of the named insured."

When the CGL policy was revised again in 1986, it contained new provisions that incorporated and clarified the Broad Form Property Endorsement. New exclusion (j)(6) and the exception to this exclusion clearly stated that the exclusion for faulty workmanship did not apply to work within the products-completed operation hazard:

This insurance does not apply to:

j. Damage to Property

"Property damage" to:

. . . .

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

. . . .

*Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."*

The 1986 policy also added new exclusion (l), the "your work exclusion," with an express exception for subcontractor work as follows:

This insurance does not apply to:

. . . .

l. Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

*This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.*

The reason for this 1986 revision that added the subcontractor exception has been explained as follows:

The insurance and policyholder communities agreed that the CGL policy should provide coverage for defective construction claims so long as the allegedly defective work had been performed by a subcontractor rather than the policyholder itself. This resulted both because of the demands of the policyholder community (which wanted this sort of coverage) and the view of insurers that the CGL was a more attractive product that could be better sold if it contained this coverage.

Moreover, the Insurance Services Office promulgated a circular on July 15, 1986, confirming that the 1986 revisions to the standard CGL policy not only incorporated the "Broad Form" property endorsement but also specifically "covered damage caused by faulty workmanship to other parts of work in progress; and damage to, or caused by, a subcontrac-

tor's work after the insured's operations are completed." Insurance Services Office Circular, Commercial General Liability Program Instructions Pamphlet, No. GL–86–204 (July 15, 1986). Of course, the subcontractor's exception to the general exclusion for a contractor's defective work becomes important only if there is coverage under the initial insuring provision.

*United States Fire Ins.,* 979 So.2d at 877–80 (citations, quotations, and footnotes omitted); *see also Lamar Homes, Inc.,* 242 S.W.3d at 12 (recognizing the significance of the changes to the CGL policy in 1986); *Am. Girl, Inc.,* 673 N.W.2d at 74 (holding "[t]he 1986 version of the CGL contains a modified 'business risk' exclusion that provides an exception for the work of subcontractors").

[¶ 17] Considering this history of the CGL policy, the Supreme Court of Florida held:

We conclude that defective work performed by a subcontractor that causes damage to the contractor's completed project and is neither expected nor intended from the standpoint of the contractor can constitute "property damage" caused by an "occurrence" as those terms are defined in a standard form commercial general liability policy. Accordingly, a claim made against the contractor for damage to the completed project caused by a subcontractor's defective work is covered under a post–1986 CGL policy unless a specific exclusion applies to bar coverage.

*United States Fire Ins.,* 979 So.2d at 875.

[¶ 18] One scholarly article summarized the Florida Supreme Court's decision as follows:

The court first disagreed with the insurer's numerous arguments against finding an "occurrence," expressly rejecting "the use of the concept of 'nat-ural and probable consequences' or 'foreseeability' in insurance contract interpretation." Second, the court rejected the insurer's distinction between tort and contractual claims, because the policy does not distinguish between either form of liability. Third, the court noted that language in exclusions cannot create coverage, but insisted that "even if there were any ambiguity" in the insuring agreement, the existence of the "subcontractor exception" indicates coverage for damage caused by subcontractors. Fourth, the court rejected the insurer's argument that "construing the term 'occurrence' to include a subcontractor's defective work converts the policies into performance bonds" because "unlike an insurance policy, a performance bond benefits the owner of a project rather than the contractor." Fifth, the court rejected the insurer's argument "that faulty workmanship that injures only the work product itself does not result in 'property damage'" because, like the "occurrence" definition, the "property damage" definition does not distinguish between damage to the contractor's work and damage to other property. Finally, the court rejected the "public policy" argument against coverage, which had previously prevailed in the appellate courts of Florida as well as other states. The court agreed that there may be a "moral hazard" in insuring contractors who cut corners in their own work, but that hazard does not exist with regard to their subcontractors, whom they do not control. Further, the court found no "windfall" for contractors because "the contractor gains nothing if insurance reimburses the costs of repairing the damage caused by the defective work."

*New Appleman on Insurance, supra* § II[C], at 6.

[¶ 19] The Florida Supreme Court is one of several state supreme courts since 2006 that have held standard CGL policies cover general contractors for resulting damage to completed operations caused by faulty workmanship of their subcontractors. *See United States Fire Ins.,* 979 So.2d 871; *Sheehan Const.,* 935 N.E.2d 160; *Lee Builders, Inc.,*137 P.3d 486; *Architex Ass'n, Inc.,* 27 So.3d 1148; *Revelation Indus.,* 206 P.3d 919; *Auto Owners Ins.,*684 S.E.2d 541; *Travelers Indem. Co. of America,* 216 S.W.3d 302; *Lamar Homes, Inc.,* 242 S.W.3d 1. This is the modern trend without even citing the numerous intermediate appellate courts and federal courts who have followed suit. *New Appleman on Insurance, supra* § II[C], at 7; *see Greystone Constr. v. Nat'l Fire & Marine Ins.,* 661 F.3d 1272, 1282 (10th Cir.2011) (holding "[i]n fact, a strong recent trend in the case law interprets the term 'occurrence' to encompass unanticipated damage to nondefective property resulting from poor workmanship").

[¶ 20] Holding that faulty subcontractor work is an "occurrence," the Indiana Supreme Court reasoned:

CGL policies insure against liability for "property damage" caused by an "occurrence." In turn the policies define "occurrence" as "an accident, including continuous exposure to substantially the same general harmful conditions." The term "accident" is not defined in the policies. However, this Court has defined accident to mean "an unexpected happening without an intention or design." Implicit in the meaning of "accident" is the lack of intentionality. The question presented is whether faulty workmanship is an accident within the meaning of a standard CGL policy. In our view the answer depends on the facts of the case. For example, faulty workmanship that is intentional from the viewpoint of the insured cannot be an "accident" or an "occurrence." On the other hand if the faulty workmanship is "unexpected" and "without intention or design" and thus not foreseeable from the viewpoint of the insured, then it is an accident within the meaning of a CGL policy.

. . . .

For an additional reason we find support for our conclusion that "accident" within the meaning of the CGL policies at issue in this case includes faulty workmanship. Although exclusionary clauses "do not grant or enlarge coverage," contract construction principles instruct us to read the pertinent provisions of insurance policies together. . . . The CGL policies include an exclusion for damage to "your work" and then narrow the exclusion by expressly declaring that it does not apply "if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." If the insuring provisions do not confer an initial grant of coverage, then there would be no reasons for a "your work" exclusion.

*Sheehan Constr.,* 935 N.E.2d at 169–71 (citations omitted); *see also Lamar Homes, Inc.,* 242 S.W.3d at 11–12; Clifford J. Shapiro, *The Good, the Bad, and the Ugly: New State Supreme Court Decisions Address Whether an Inadvertent Construction Defect is an "Occurrence" Under CGL Policies,* 25 Constr. Law., 9, 12–13 (Summer 2005).

[¶ 21] American Family argues this Court's decision in *ACUITY v. Burd & Smith Constr.,* 2006 ND 187, 721 N.W.2d 33, is dispositive. We disagree. In *Burd & Smith,* the insured was a general con-

tractor that contracted with apartment building owners to replace the building's roof. *Id.* at ¶ 2. The building owners, in addition to tenants who had sustained property loss due to water damage, claimed the insured general contractor failed to protect the apartment building from rainstorms while replacing the roof, causing extensive damage to the building's interior. *Id.* The insurer commenced a separate action, seeking a declaration that the insured's CGL policy did not provide coverage for the damages in the underlying action. *Id.* at ¶ 4.

[¶ 22] In addressing the insurer's argument that claims for damages based on allegations of defective workmanship could not constitute an "occurrence" under a CGL policy, our Court held that "property damage caused by *faulty workmanship is a covered occurrence to the extent* the faulty workmanship causes bodily injury or property *damage to property other than the insured's work product.*" *Id.* at ¶ 16 (emphasis added). Our Court expressly agreed with the rationale of courts "holding that faulty workmanship causing damage to property other than the work product is an accidental occurrence for purposes of a CGL policy" because "[t]hat rationale is consistent with the coverage risks for a CGL policy and the plain and ordinary language of the policy." *Id.* Our Court held the apartment owner's claim against the insured was within the CGL policy's coverage provisions because the owners had alleged damage to the apartment building's interior, rather than only to the insured's work product, the roof, and that claim was the type of risk covered by a CGL policy. *Id.* at ¶ 17.

[¶ 23] The holding in *Burd & Smith* thus adopted the rationale of other courts that under a CGL policy faulty or defective workmanship, standing alone, is not an accidental occurrence but " 'if faulty work-

manship causes bodily injury or property damage to something other than the insured's work product, an unintended and unexpected event has occurred and coverage exists.' " *Id.* at ¶ 15 (quoting *Auto-Owners Ins. v. Home Pride Cos.,* 268 Neb. 528, 684 N.W.2d 571, 576–79 (2004)); *see also Lexicon, Inc. v. ACE Am. Ins.,* 634 F.3d 423, 427 (8th Cir.2010); *Essex Ins.,* 261 S.W.3d at 459–60; *Kvaerner Metals.,* 908 A.2d at 899–900; *Stoneridge Dev. v. Essex Ins.,* 382 Ill.App.3d 731, 321 Ill.Dec. 114, 888 N.E.2d 633, 654 (2008).

[¶ 24] The first question we address in the present case must be whether the faulty workmanship may constitute an occurrence. Our Court in *Burd & Smith* incorrectly decided the question of whether faulty workmanship may constitute an "occurrence" by drawing a distinction between faulty workmanship that damages the insured's work or product and faulty workmanship that damages a third party's work or property. This focus on the nature of the property damaged to define whether there has been an "occurrence" has been criticized by courts and commentators. *See, e.g.,* Stephen N. Goldberg & James S. Carter Jr., 3 *New Appleman Law of Liability Insurance* § 28.03[1][b] (2d ed.2012) ("[t]he effect of this categorical rule is to eliminate any possibility of coverage for claims alleging construction defects that caused damage to the insured's work only, even if the faulty work was performed by a subcontractor."). Another court addressed the concern that, by looking at the scope of coverage through the lens of the "your work" exclusion, policy coverage was being created by something other than the insuring agreement's grant of coverage. *Stanley Martin Cos. v. Ohio Cas. Group,* 313 Fed.Appx. 609, 613 n. 2 (4th Cir.2009). The court in *Stanley Martin* continued:

Although this is a valid point, it misses the mark slightly. The import of the "your work" exclusion and its subcontractor exception is not that the exclusion "creates" coverage. Rather, the import is that the exception lends insight into the baseline definition of "occurrence" from which parties and courts interpreting CGL policies should operate. If the definition of "occurrence" cannot be understood to include an insured's faulty workmanship, an exclusion that exempts from coverage any damage the insured's faulty workmanship causes to its own work is nugatory. If, on the other hand, the definition of "occurrence" does include an insured's faulty workmanship, such an exclusion functions as a meaningful "limitation or restriction on the insuring clause." *Nationwide Mut. Ins. Co. v. Wenger*, 222 Va. 263, 278 S.E.2d 874, 876 (1981) (quoting *Haugan v. Home Indem. Co.*, 86 S.D. 406, 197 N.W.2d 18, 22 (1972)). 313 Fed.Appx. at 613 n. 2.

[¶ 25] There is nothing in the definition of "occurrence" that supports that faulty workmanship that damages the property of a third party is a covered "occurrence," but faulty workmanship that damages the work or property of the insured contractor is not an "occurrence." As the Supreme Court of Texas in *Lamar Homes, Inc.*, 242 S.W.3d at 9, explained:

> The CGL policy ... does not define an "occurrence" in terms of the ownership or character of the property damaged by the act or event. Rather, the policy asks whether the injury was intended or fortuitous, that is, whether the injury was an accident. As one court has observed, no logical basis within the "occurrence" definition allows for distinguishing between damage to the insured's work and damage to some third party's property:

> The logical basis for the distinction between damage to the work itself (not caused by an occurrence) and damages to collateral property (caused by an occurrence) is less than clear. Both types of property damage are caused by the same thing—negligent or defective work. One type of damage is no more accidental than the other. Rather, ... the basis for the distinction is not found in the definition of an occurrence but by application of the standard "work performed" and "work product" exclusions found in a CGL policy.

*Erie Ins. Exch. v. Colony Dev. Corp.*, 136 Ohio App.3d 419, 736 N.E.2d 950, 952 n. 1 (2000). We likewise see no basis in the definition of "occurrence" for the district court's distinction.

[¶ 26] We conclude faulty workmanship may constitute an "occurrence" if the faulty work was "unexpected" and not intended by the insured, and the property damage was not anticipated or intentional, so that neither the cause nor the harm was anticipated, intended, or expected. This is consistent with our definition of "accident" for purposes of a CGL policy. *See Wall*, 274 N.W.2d at 216. To this extent we overrule *Burd & Smith.*

[¶ 27] Under the CGL policy, however, not every "occurrence" is covered. Only those occurrences that cause "bodily injury" or "property damage" are covered. We, therefore, next address whether the faulty workmanship resulted in "property damage." The CGL policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property" and "[l]oss of use of tangible property that is not physically injured." On this record, the damage to the home is stated as including cracks, unevenness, and shifting, all of which would fall within "physical injury" to

"tangible property" for purposes of the CGL policy. Although the CGL policy grants coverage for "property damage," the grant is limited by the exclusion for damage to "your work." This exclusion would eliminate coverage but for the subcontractor exception to the exclusion under the CGL policy. We conclude that when "a general contractor becomes liable for damage to work performed by a subcontractor—or for damage to the general contractor's own work arising out of a subcontractor's work—the subcontractor exception preserves coverage that the 'your-work' exclusion would otherwise negate." *Lamar Homes, Inc.*, 242 S.W.3d at 12.

## IV

[¶ 28] We reverse the trial court's summary judgment. We conclude an "occurrence" may exist within the CGL policy coverage. We remand for the trial court to determine the facts, including whether the faulty work and the resulting property damage was unexpected and unintended. We also remand for the trial court's consideration of the assertions by the insurer, American Family, that other exclusions are applicable to the facts of this case.

[¶ 29] CAROL RONNING KAPSNER

CROTHERS, Justice, concurring specially.

[¶ 30] I concur in the majority's result because the CGL policy issued by American Family to K & L may provide coverage, so that we must reverse summary judgment and remand for further proceedings. However, I do not join Justice Maring's position that we overrule *ACUITY v. Burd & Smith Constr., Inc.*, 2006 ND 187, 721 N.W.2d 33, because that case involved an insured contractor's faulty workmanship and this case involves defective work of a subcontractor.

[¶ 31] The issue here is whether American Family's CGL policy provides coverage for a claim based on faulty work of a construction subcontractor. I agree with the majority's conclusion based on language of the insurance policy, industry documents describing adoption of the current version of the CGL policy and the extensive, persuasive writing of commentators and of our sister courts. The policy language and the other writings suggest either that our precedent on an occurrence is unreliable or that it cannot be properly extended to faulty work of a subcontractor. Whether our precedent is unreliable on the question of an occurrence for faulty work of an insured contractor is not before the Court and therefore is not ripe for consideration.

[¶ 32] The insurance contract here provides coverage for "those sums that [K & L] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Coverage exists for "property damage" if the "'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'" An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," and "property damage" means "[p]hysical injury to tangible property, including all resulting loss of use of that property" and "[l]oss of use of tangible property that is not physically injured." The policy does not define "accident." In the context of the interpretation of an insurance policy, we have defined "accident" as "happening by chance, unexpectedly taking place, not according to the usual course of things." *Wall v. Penn. Life Ins. Co.*, 274 N.W.2d 208, 216 (N.D. 1979) (quoting *Continental Cas. Co. v. Jackson*, 400 F.2d 285, 288 (8th Cir.1968)). *See also Kasper v. Provident Life Ins. Co.*,

285 N.W.2d 548, 553 (N.D.1979); *ACUITY*, 2006 ND 187, ¶ 14, 721 N.W.2d 33.

[¶ 33] Pertinent to the arguments in this case, American Family's CGL policy contains several exclusions to coverage, including a "your work" exclusion with a "subcontractor exception":

"The insurance does not apply to:

. . . .

"*l.* Damage To Your Work

'Property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard'.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor."

The policy defines "your work" as "a. Work or operations performed by you or on your behalf; and b. Materials, parts or equipment furnished in connection with such work or operations." " 'Your work' includes: a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work'; and b. The providing of or failure to provide warnings or instructions."

[¶ 34] Normal interpretation of an insurance policy calls for examination of the grant of coverage, then application of exclusions and exceptions. *See Wisness v. Nodak Mut. Ins. Co.*, 2011 ND 197, ¶ 16, 806 N.W.2d 146. Using that method in this case leads back to the holding in *ACUITY* and back to a conclusion no occurrence exists to trigger coverage. I will get to that, but recognition of developments underpinning CGL insurance policies are a necessary precursor.

[¶ 35] American Family's CGL policy is a standard form product. The majority opinion reviews post–1986 developments of standard form CGL policies. Majority Opinion at ¶¶ 14–20. Those developments need not be repeated here.

[¶ 36] The chronicle of CGL policy development since 1986 tells us several things. First, cases interpreting CGL policies written before 1986 involved dramatically different insuring agreements than post–1986 policies. Second, what might be an insured loss under a post–1986 CGL policy for faulty work of a subcontractor is different from coverage available for defective work of an insured contractor. Respected commentators have written extensively on the contractor verses subcontractor difference in CGL policy coverage. In one treatise the commentators explained:

"The 'your work' exclusion, usually exclusion *l*, is a 'business risk' exclusion that precludes coverage for property damage to the insured's work that occurs after the insured's work is complete. Specifically, the 'your work' exclusion precludes coverage for:

'Property damage' to 'your work' arising out of it or any part of it and included in the 'product-completed operations hazard.'

'Your work' means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

"In contrast to the ongoing operations exclusion and the incorrectly performed work exclusion, the 'your work' exclusion does not contain a limitation to its scope through use of '[t]hat particular part' language or a similar restriction. The exclusion is thus said to apply expansively to damage to any part of the insured's work, whether defective or non-defective. The 'your work' exclusion may

therefore preclude coverage for damage to the insured's work, even though damage to non-defective components of the insured's work may constitute property damage caused by an occurrence in many jurisdictions.

"Many insureds argue that the mere existence of the 'your work' exclusion confirms that the standard form insurance agreement, and the insurance industry as a whole, contemplated that defective and negligent construction could be an occurrence, and thus within the grant of coverage, contrary to the holdings of certain state courts, although aspects of liabilities resulting therefrom are excluded by this exclusion.

. . . .

"The 'your work' exclusion contains an exception for the work of a subcontractor. The subcontractor exception provides:

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

"The 'your work' exclusion often might serve as a complete bar to coverage for damage to the insured's work but for the subcontractor exception. The subcontractor exception reinstates coverage for damage caused by the work of a subcontractor. Thus, when a general contractor becomes liable for damage to work performed by a subcontractor— or for damage to the general contractor's own work arising out of a subcontractor's work—the subcontractor exception preserves coverage that the 'your work' exclusion would otherwise negate.

"The subcontractor exception has been found to preserve coverage for liabilities arising from property damage involving a subcontractor in at least the following situations:

- A subcontractor's defective work causes damage to the insured's work.
- The insured contractor's defective work causes damage to the subcontractor's work.
- The defective work of one or more subcontractors causes damage to a subcontractor's work.

"The term 'subcontractor' is not defined in the CGL policy but courts have construed it broadly to include any vendor, even a supplier of materials, that performs services or provides materials according to a general contractor's specifications.

"A developer that acts as its own general contractor can rely on the subcontractor exception. In *Erie Insurance Exchange v. Colony Development Corp.*, [Nos. 02AP–1087, 02AP–1088, 2003 WL 23096010, 2003 Ohio App. LEXIS 6518 (Ohio Ct.App. Dec. 31, 2003),] a developer acting as a general contractor subcontracted out all construction for a condominium project. The condominium association sued the developer for faulty construction and the developer sought coverage under the developer's CGL policy. The court held that the 'your work' exclusion did not apply because the developer's employees 'did not perform any of the construction' and because the subcontractor's work caused the damage, although the court ultimately found the developer was not entitled to coverage because of a different exclusion.

"Although the subcontractor exception to the 'your work' exclusion is standard in CGL policies, ISO has developed endorsements that remove the subcontractor exception to the 'your work' exclusion entirely. The 'your work' exclusion as amended by such endorsements has

been interpreted to eliminate coverage for the insured's work, whether performed by a contractor or a subcontractor. A policy that contains such an endorsement removing the subcontractor exception provides less insurance than one that leaves the standard form intact. Accordingly, both an insurer and an insured general contractor need to review the controlling policy carefully to ensure that the policy contains the intended coverages.

"The scope of the subcontractor exception must be read in connection with the definitions of 'occurrence' or 'property damage,' as interpreted by the courts of the relevant jurisdiction. For instance, the subcontractor exception will not restore coverage for a general contractor even if the general contractor's liability arises from the defective work of a subcontractor if the law of the controlling jurisdiction does not consider defective work by anyone to be an occurrence in the first instance. Courts that so hold usually do so without consideration or knowledge of the drafting history of the standard CGL form and the reason that the insurance industry included the subcontractor exception to the 'your work' exclusion."

Stephen N. Goldberg & James S. Carter Jr., *Liability Insurance for Construction Defects* in 3 *New Appleman Law of Liability Insurance* § 28.04[10][a]-[b] (Matthew Bender 2d ed.2012) (footnotes omitted).

[¶ 37] As noted by the authors quoted above, the subcontractor exception must be read in harmony with the definition of an occurrence. That analysis returns us to this Court's holding in *ACUITY*, and discussion of how North Dakota has defined an occurrence.

[¶ 38] In *ACUITY*, we held as follows:
"We agree with the rationale of those courts holding that faulty workmanship causing damage to property other than the work product is an accidental occurrence for purposes of a CGL policy. That rationale is consistent with the coverage risks for a CGL policy and the plain and ordinary language of the policy. We conclude property damage caused by faulty workmanship is a covered occurrence to the extent the faulty workmanship causes bodily injury or property damage to property other than the insured's work product."

2006 ND 187, ¶ 16, 721 N.W.2d 33. This holding must be read with the discussion preceding it:

"In *Auto–Owners [Ins. Co. v. Home Pride Cos., Inc.]*, 268 Neb. 528, 684 N.W.2d [571, 578 (2004) ], the Nebraska Supreme Court said that a CGL policy does not provide coverage for faulty workmanship that damages only the insured's work product, but 'if faulty workmanship causes bodily injury or property damage to something other than the insured's work product, an unintended and unexpected event has occurred and coverage exists.' *See also [J.Z.G. Res., Inc. v.] King*, 987 F.2d [98, 101–03 (2d Cir.1993) ] (distinguishing cases that allege faulty workmanship alone and cases that allege damage to property other than the work product); *Pursell [Constr., Inc. v. Hawkeye–Security Ins., Co.]*, 596 N.W.2d [67, 71 (Iowa 1999) ] (claimed damages limited to contractor's work product and were not accidental occurrence); *McAllister [v. Peerless Ins. Co.]*, 124 N.H. 676, 474 A.2d 1033, 1036–37 (1984) ] (claimed damages were for cost of correcting defective landscaping work with no claim that defects had caused damage to property other than the work product); *Heile [v. Herrmann]*, 136 Ohio App.3d 351, 736 N.E.2d [566, 568 (1999) ] (claimed damages all related to contrac-

tors own work, not to consequential damages stemming from that work); *L–J, Inc. [v. Bituminous Fire & Marine Ins. Co.]*, 350 S.C. 549, 567 S.E.2d [489, 493 (Ct.App.2002) ] (faulty workmanship that causes damage to property other than work product is covered accidental occurrence)."

*ACUITY*, at ¶ 15.

[¶ 39] Courts and commentators have criticized the approach taken by North Dakota, Nebraska and other states, arguing we have utilized an unduly restrictive reading of the term "occurrence." *See, e.g.,* 3 *New Appleman Law of Liability Insurance, supra,* § 28.03[1][b] ("The effect of this categorical rule is to eliminate any possibility of coverage for claims alleging construction defects that caused damage to the insured's work only, even if the faulty work was performed by a subcontractor."). Another court addressed the concern that, by looking at the scope of coverage by examining the "your work" exclusion, policy coverage was created by language other than the insuring agreement's grant of coverage. *Stanley Martin Cos., Inc. v. Ohio Casualty Group,* 313 Fed.Appx. 609, 2009 WL 367589, at *3 n. 2 (4th Cir. Feb. 12, 2009). The court in *Stanley Martin* continued:

"Although this is a valid point, it misses the mark slightly. The import of the 'your work' exclusion and its subcontractor exception is not that the exclusion 'creates' coverage. Rather, the import is that the exception lends insight into the baseline definition of 'occurrence' from which parties and courts interpreting CGL policies should operate. If the definition of 'occurrence' cannot be understood to include an insured's faulty workmanship, an exclusion that exempts from coverage any damage the insured's faulty workmanship causes to its own work is nugatory. If, on the other hand,

the definition of 'occurrence' does include an insured's faulty workmanship, such an exclusion functions as a meaningful 'limitation or restriction on the insuring clause.' *Nationwide Mut. Ins. Co. v. Wenger,* 222 Va. 263, 278 S.E.2d 874, 876 (1981) (quoting *Haugan v. Home Indem. Co.,* 86 S.D. 406, 197 N.W.2d 18, 22 (1972))."

*Stanley Martin,* at *3 n. 2.

[¶ 40] To reconcile that criticism and yet preserve the subcontractor exception to the "your work" exclusion, an exception has been created for defective work performed by subcontractors:

"The tension between deeming defective construction not to constitute an 'occurrence' and the subcontractor exception to the 'your work' exclusion has convinced some courts to carve out an exception for defective construction performed by a subcontractor. As one of these courts explained, 'it is undeniable that excluding faulty subcontractor work from the definition of "occurrence" would reduce the operation of the subcontractor exception so drastically that the language would virtually cease to be of any meaningful effect.' Thus, while a court will not interpret the occurrence definition of a CGL policy to include a general contractor's self-performed defective construction, it will reach the opposite interpretation if its subcontractor's defective construction was the cause. In the view of these courts, the exception harmonizes the occurrence definition with the 'subcontractor exception' in the your work exclusion."

3 *New Appleman Law of Liability Insurance, supra,* § 28.03[1][b] (quoting *Great American Ins. Co. v. Woodside Homes Corp.,* 448 F.Supp.2d 1275, 1283 (D.Utah 2006) and citing *Stanley Martin,* 313 Fed. Appx. 609, 2009 WL 367589 (4th Cir. Feb. 12, 2009)).

742

[¶ 41] Justice Maring would reverse *ACUITY*. That holding would make a broad proclamation that faulty workmanship can be an accidental occurrence under a CGL policy. I remain uncertain whether that broad conclusion is correct. I therefore would defer considering whether to overrule *ACUITY* to a case involving a contractor's defective work where we are specifically asked to revisit the holding in *ACUITY*.[1] For purposes of the present case, it is sufficient for us to hold defective work by a subcontractor causing damage to the contractor's work *can* be an accidental occurrence. Upon that ruling, I join the majority remanding this case to the district court for determination whether coverage exists under American Family's letter declining coverage under the CGL policy and under the facts of this case.

[¶ 42] DANIEL J. CROTHERS

VANDE WALLE, Chief Justice, dissenting.

[¶ 43] I respectfully dissent. The majority does an admirable job of painting the national scene on the issue of whether or not the commercial general liability policy definition of an "occurrence" includes coverage for the subcontractor's faulty workmanship. However, to reach the majority's result it is necessary to reverse our prior case law. As the majority notes, there is a mixture of judicial opinions on this subject. I do not agree that this Court must alter its precedent to match the majority of other jurisdictions or, for that matter, the majority of the pundits who have written on this matter in various treatises, law reviews and industry journals.

[¶ 44] On the other hand, it is my experience that the substantial number of judicial opinions construing insurance policies generally, are due in large part to a court's construction of an insurance contract which is displeasing to the construction industry or the insurance industry which then modifies its model contract to counteract the judicial opinion which leads to yet another judicial opinion as to the meaning and intent of the modification.

[¶ 45] That is apparently what happened in *Sheehan Const. v. Continental Cas. Co.*, 935 N.E.2d 160 (Ind.2010), cited and relied upon by the majority opinion. Like the majority opinion in this case, the majority in *Sheehan* found it necessary to reverse prior precedent to reach its desired result. However, the decision to do so was not unanimous and in one of the two dissents Chief Justice Shepard wrote:

My colleague's majority opinion is a genuine tour de force on the development of widely-used forms of commercial general liability policies and the interpretations given them by state and federal courts. Still, I conclude that it leads Indiana to the wrong result.

To make a long story short, I think these policies are neither designed nor priced as coverage for whatever demands the insured may face in the nature of ordinary consumer claims about breach of warranty. Inquiry during oral argument suggested that there may not even exist in the marketplace an insurance product that "covers me when I don't do a very good job," if you will.

As the majority recognizes, there is in the country a divide in the case law on

1. Even if we revisit the precise holding in *ACUITY* that damage to the contractor's work product caused by the contractor's defective work, the result likely does not change due to policy exclusions. Again, however, that anal-

ysis is best left to a case properly developed through the adversarial process. *Sandberg v. American Family Ins. Co.*, 2006 ND 198, ¶¶ 19–21, 722 N.W.2d 359 (Crothers, J., concurring specially).

the point we decide today. I would put us on the other side of this divide.

*Id.* at 172. Like Chief Justice Shepard's dissent in *Sheehan,* I believe the majority leads North Dakota to the wrong result.

[¶ 46] We found our path through the thicket in *ACUITY v. Burd & Smith Const., Inc.,* 2006 ND 187, 721 N.W.2d 33. We concluded that property damage caused by faulty workmanship is a covered occurrence to the extent it causes damage to property other than the work product. I would adhere to that opinion.

[¶ 47] GERALD W. VANDE WALLE, C.J.

SANDSTROM, Justice, dissenting.

[¶ 48] I agree with Chief Justice VandeWalle's dissenting opinion that there was no "occurrence" under the policy for the purposes of the subcontractor exception.

[¶ 49] The majority opinion assumes without deciding that there was a subcontractor at the time of the faulty workmanship "occurrence."

[¶ 50] For the subcontractor exception to apply, Dakota Ready Mix would had to have been a subcontractor to a contract entered into by K & L Homes at the time Dakota Ready Mix did its work. But it appears that it was not. As the district court noted, "The house that was sold was defective at the time it was sold." The district court further noted, "There was no obligation to the Lenos at the time the faulty work was done."

[¶ 51] It appears the buyer in the underlying lawsuit purchased the house from K & L Homes after the faulty workmanship was completed. K & L Homes had not contracted to build the home for the buyer. Therefore, when Dakota Ready Mix was hired by K & L Homes to pour the foundation and when it did the work, it appears Dakota Ready Mix was not acting as a subcontractor.

[¶ 52] According to *Black's Law Dictionary,* a subcontractor is "[o]ne who is awarded a portion of an existing contract by a contractor, esp. a general contractor." *Black's Law Dictionary* 1560 (9th ed.2009).[1] It appears that Dakota Ready Mix was not awarded a portion of an existing contract in this case.

[¶ 53] Presumably, on remand, the issue of whether there was a subcontractor at the time of the faulty workmanship will be resolved.

[¶ 54] DALE V. SANDSTROM

---

1. To the extent that the words in the secondary authority cited in the concurring opinion at ¶ 36 might be read to suggest that the subcontractor exception is not limited to a subcontractor, that reading would be contradicted by the underlying authority.