# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2783

_____

Landers Auto Group Number One, Inc.,   *
doing business as Landers Toyota,      *
                                     *
        Plaintiff – Appellant,      *
                                     *   Appeal from the United States
     v.                            *   District Court for the Eastern
                                     *   District of Arkansas.
Continental Western Insurance      *
Company,                     *
                                     *
        Defendant – Appellee.    *

_____

Submitted: April 12, 2010
Filed: September 17, 2010

_____

Before BYE, BEAM, and GRUENDER, Circuit Judges.

_____

BYE, Circuit Judge.

Landers Auto appeals the district court's[1] grant of summary judgment in favor of Continental Western on Landers's claims for indemnity and defense under an insurance contract. We affirm.

_____

[1]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas.

# I

At all times relevant to this suit, Landers Auto maintained comprehensive liability insurance for its auto dealership with Continental Western. In 2003, Landers sold a car to Latwanna Clark. The car was financed by Toyota Motor Corporation (TMC) and Landers guaranteed the loan as part of a special financing incentive it was offering to buyers at the time. Clark alleged that TMC failed to credit several of her payments and listed her as delinquent on the loan. When TMC contacted Landers as guarantor, Landers paid the loan in full and repossessed the car. Clark sued Landers and TMC, alleging wrongful repossession and conversion (for repossessing and reselling the car when Clark claims she was not in default) and violations of the Arkansas Deceptive Trade Practices Act (for failing to credit payments on an open account and for repossessing and selling the car when Clark was not in default.)

Landers filed a claim with Continental and requested defense and indemnification. Landers also requested permission to use its own attorney for the case. Continental responded that it would defend the case under a reservation of rights because most claims in the case were not covered by its policies. Continental reserved the right to cease defending at any time and to deny indemnification, but agreed to defend because the complaint might state a claim under the Truth in Lending Act (TLA), which would trigger coverage under its Errors or Omissions policy. Continental noted it had appointed panel counsel to defend the underlying case and followed up with a letter explaining why there was no conflict between Continental and Landers that would require the use of separate counsel for Landers. Landers responded that a reservation of rights created an inherent conflict and reasserted its right to independent counsel. The parties went back and forth a few more times with Continental explaining its position on the conflict issue and Landers standing on its right to separate counsel under the inherent conflict theory. Eventually, Continental informed Landers that its refusal to accept representation by the designated attorney would jeopardize coverage under the policy.

Landers sued for declaratory judgment and requested a declaration that Continental had a duty to defend the Clark suit under the policy, the reservation of rights created an inherent conflict which triggered a right for Landers to select counsel of its own choosing at Continental's expense, and Continental had a duty to indemnify Landers in the Clark suit. Landers argued the Clark lawsuit was a covered event under three different policies: the Commercial Garage Coverage policy, the Automobile Dealers Errors & Omissions Insurance policy, and the Commercial General Liability policy. Continental counterclaimed, seeking a declaration it did not owe a duty to defend the suit or to indemnify Landers under the policies. Landers moved for partial summary judgment on the issues of Continental's duty to defend and Landers's right to choose counsel. Continental moved for summary judgment on all claims. The district court granted summary judgment to Continental and dismissed Landers's claims with prejudice. This appeal followed.

II

*Standard of Review and Legal Standard*

This court reviews a district court's decision to grant summary judgment de novo. Anda v. Wickes Furniture Co., 517 F.3d 526, 531 (8th Cir. 2008). Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The deciding court views the evidence, and makes all reasonable inferences from the evidence, in favor of the nonmoving party. Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000). "[S]ummary judgment must be denied if on the record before it the court determines that there will be sufficient evidence for a jury to return a verdict in favor of the nonmoving party." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

***Duty to Defend***

> In examining the duty to defend, [the Arkansas Supreme Court] has recognized the general rule that the allegations in the pleadings against the insured determine the insurer's duty to defend. Additionally, th[e] court has recognized that the duty to defend is broader than the duty to indemnify. However, the duty to defend arises when there is a possibility that the injury or damage may fall within the policy coverage. Conversely, where there is no possibility that the damage alleged in the complaint may fall within the policy coverage, there would be no duty to defend.

Murphy Oil USA, Inc. v. Unigard Sec. Ins. Co., 61 S.W.3d 807, 812-13 (Ark. 2001) (citation omitted).

*Errors and Omissions Policy*

Continental initially agreed to defend the suit because the allegations in the complaint might be construed to state a claim under the Truth in Lending Act. The Errors & Omissions policy contains the following language:

> Part VI - Truth in Lending Act - Errors and Omissions Liability Coverage
>
> 1. WE WILL PAY
>
> We will pay all sums you become legally obligated to pay as damages because of any negligent act, error or omission resulting in failure to comply with SECTION 130, CIVIL LIABILITY OF TITLE 1 (TRUTH IN LENDING ACT) OF THE CONSUMER CREDIT PROTECTION ACT (PUBLIC LAW 90-321:82 STAT. 146) and as may be amended from time to time.

The Truth in Lending Act requires appropriate disclosure at the time of a loan or extension of credit of the terms and conditions under which credit is being extended. See 17 Am. Jur. 2d Consumer Protection § 3 (Westlaw 2010). The Clark complaint alleges failure to credit payments and wrongful conversion of Clark's property. Clark alleges breach of the terms of the credit agreement but makes no allegation that the terms were not properly disclosed and her complaint does not mention the Truth in Lending Act at all. Neither party has cited to a provision of the Truth in Lending Act under which the allegations of the Clark complaint would constitute a violation.

Continental originally agreed to defend based on the following language in the complaint: "10. Defendant Landers had co-signed the finance document with a special financing offer ("100% guarantee") under the guarantee that if Clark did not make the schedule [sic] payments on the car then Landers would make the payments to the finance company, 'TMC'." The complaint also alleges that when the car was repossessed, Landers offered to return the vehicle to Clark if TMC would reinstate the financing but "asserted that they would no longer provide 100% guarantee for financing Ms. Clark under the original loan." While the complaint references the 100% guarantee, and Continental was initially concerned it might have a duty to defend if Clark were alleging that Landers misrepresented the nature of the guarantee, the remainder of the Clark complaint makes it clear the claims are being brought for failure to credit payments and for repossessing the car, not for failure to comply with the TLA. The complaint does not set forth a TLA claim and Continental has no duty to defend under that provision of the policy.

The district court did not address the TLA claims directly, finding the issue of coverage under the property damage provisions of the Garage policy dispositive. This was error. The TLA coverage was separate and unrelated to any requirement for property damage. However, since Continental did not have a duty to defend under the TLA coverage the district court's error in this respect was harmless.

-5-

*Garage Policy*

The garage policy covers:

Section II - Liability Coverage

A.  Coverage

1.  "Garage Operations" - Other than Covered "Autos"

a.  We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies caused by an "accident" and resulting from "garage operations" other than the ownership, maintenance or use of coverage "autos".

The policy excludes coverage for:

1.  Expected or Intended Injury

"Bodily Injury" or "property damage" expected or intended from the standpoint of the insured.  But for "garage operations" other than covered "autos" this exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

...

6.  Care, Custody or Control

"Property damage" to or "covered pollution cost or expense involving:

d.  Property in the "insured's" care, custody or control.

...

14.  Loss of Use

Loss of other property not physically damaged if caused by:

      a.  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

The policy defines "garage operations" as

> the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. "Garage operations" includes the ownership, maintenance or use of the "autos" indicated in Section I of this Coverage Form as covered "autos". "Garage operations" also includes all operations necessary or incidental to a garage business.

An insurance policy is interpreted according to the plain, ordinary, and popular meaning of the language.  McGrew v. Farm Bureau Mut. Ins. Co. of Ark., Inc., 268 S.W.3d 890, 895-96 (Ark. 2007).  The "loss" which Landers argues is covered under the garage policy is Clark's alleged loss of use of her car after it was repossessed.  She did not make any claim for physical damage to her car.

The incident is not covered under the garage policy because the loss arises from the allegedly improper repossession, which is not an activity associated with operation of a garage but of the financing activities of the dealership.  The claims also fall under the exclusion for expected or intended loss, since Landers certainly expected or intended that Clark would lose the use of her automobile when it was repossessed. Coverage is further excluded under the provision regarding loss of use for failure to perform a contract or other agreement in accordance with its terms.  The damages in the Clark complaint arise from alleged breaches of the financing agreement between Landers, TMC, and Clark.

The district court properly determined Continental had no duty to defend the claims under the Garage policy.

*Commercial Liability Policy*

The Commercial Liability Policy reads, in pertinent part:

Section 1 - Coverages

    1.  Insuring Agreement

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of the "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

...

2.  Exclusions

    This insurance does not apply to:

    a.  Expected or Intended Injury

    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

    m.  Damage To Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured arising out of:

...

2. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

The policy defines "property damage" as "loss of use" deemed to occur at the time of the "occurrence" that caused it. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Landers argues the Clark suit arises from an "accident" - that is, Landers's or TMC's accidental failure to credit Clark's payments properly. This square-peg-in- a-round-hole argument fails for a number of reasons. First, the plain language of the word "accident" when read in context with the garage policy and with the definition in the Commercial policy makes it clear the policy refers to physical accidents as opposed to accounting errors. Second, the claims against Landers do not arise from the accounting errors but from intentional acts taken by Landers with respect to its rights and obligations under the financing agreement, that is, the repossession of the car and alleged failure to negotiate in good faith. Those are intentional acts that would not fit the ordinary definition of an accident.

The incident is also excluded from coverage under this policy because the loss of use was a loss Landers "expected" would occur when it took the action of repossessing the car. As with the garage policy, the events alleged in the Clark complaint are additionally excluded from coverage because the damages arise from Landers's alleged failure to comply with the terms of the agreements between Landers, Clark, and TMC.

-9-

***Duty to Indemnify***

"[T]he duty to defend is broader than the duty to indemnify[.]" <u>Murphy Oil</u>, 61 S.W.3d at 812. The above analysis on the duty to defend applies. If Continental does not have a duty to defend Landers on these claims, it certainly cannot have a duty to indemnify based on any of the same claims. There is simply no coverage under the policy for the Clark complaint in its present form.

## III

The district court erred in dismissing Landers's complaint without deciding the question of whether Continental had a duty to defend Landers under the Truth in Lending provisions of the Errors and Omissions policy. However, such error was harmless because Continental had no such duty under the policy.[2] The district court did not err in determining that the Clark lawsuit is either not covered or is excluded from coverage under the Garage policy and under the Commercial General Liability policy.

We affirm.

_____

[2]We do not reach the issue of whether the reservation of rights created a conflict or whether Landers was entitled to choose its own counsel because we find Continental had no duty to defend and thus was not required to provide Landers with counsel.