# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-2521
_____

Rodenburg LLP, doing business as Rodenburg Law Firm

*Plaintiff - Appellant*

v.

Certain Underwriters at Lloyd's of London, Syndicate No. 4020, subscribing to Policy Number DCLPLA 00574-00

*Defendant*

The Cincinnati Insurance Company

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of North Dakota - Eastern
_____

Submitted: May 11, 2021
Filed: August 25, 2021
_____

Before COLLOTON, WOLLMAN, and KOBES, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Rodenburg Law Firm (Rodenburg) appeals from the district court's[1] adverse grant of summary judgment, arguing that The Cincinnati Insurance Company (Cincinnati) breached its contractual duty to defend Rodenburg against a lawsuit filed by Charlene Williams (Williams). We affirm.

## I. Background

Rodenburg purchased a Commercial Umbrella Liability Policy from Cincinnati. The policy is governed by North Dakota law and obligates Cincinnati to indemnify Rodenburg for liability to third parties for certain defined injuries, namely "bodily injury," "property damage," and "personal and advertising injury," if such injury was "caused by an 'occurrence.'" "Bodily injury" includes "humiliation, shock, fright, mental anguish or mental injury." "Personal and advertising injury" means "injury, including 'bodily injury', arising out of one or more of the following offenses: . . . Malicious prosecution; [or] . . . Defamation of character; [or] . . . publication . . . of material that violates a person's right of privacy." The policy excludes coverage for "bodily injury" that was "expected or intended from [Rodenburg's] standpoint," and for liability arising out of conduct alleged to violate certain statutes. Cincinnati has a "duty to defend [Rodenburg] against any 'suit' seeking damages because of 'bodily injury', 'personal and advertising injury', or 'property damage' to which [the policy] applies."

Rodenburg, whose primary business is debt collection, obtained a default judgment on a debt owed by a "Charlene Williams." In early November 2016, Rodenburg served a notice of intent to garnish "Charlene Williams's" wages at the residential address associated with the debt. Receiving no answer, Rodenburg then served US Foods, Williams's employer, with a garnishment notice. Williams

---

[1]The Honorable Peter D. Welte, United States District Judge for the District of North Dakota.

contacted Rodenburg on December 21, 2016, and allegedly informed it that she was not the debtor against whom it had a default judgment. Rodenburg allegedly ignored this information and proceeded to garnish Williams's paychecks for six weeks beginning on December 29, 2016. After a lawyer informed Rodenburg in February 2017 that it indeed had the wrong "Charlene Williams," Rodenburg ceased garnishment and returned the wrongfully garnished funds to Williams.

Williams thereupon sued Rodenburg, asserting several theories including wrongful garnishment, tort-based claims, and violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C § 1692 et seq. The complaint alleged that Rodenburg violated the FDCPA by: communicating with third parties, including her employer, about the alleged debt, see id. § 1692c(b); garnishing her wages even after learning that it had identified the wrong person, see id. § 1692d (prohibiting conduct in connection with a debt collection that harasses, oppresses, or abuses); representing that Williams owed a debt, representing that it had a right to collect the debt, attempting to induce Williams to pay the debt, and implying that Williams had committed other disgraceful conduct, see id. § 1692e (prohibiting the use of "false, deceptive, or misleading representation or means in connection with" debt collection); and collecting or attempting to collect the debt without legal authority to do so, see id. § 1692f (prohibiting the use of "unfair or unconscionable means" to collect a debt). Citing the FDCPA's recognition of "a person's inherent right to privacy in collection matters," see id. § 1692(a) ("Abusive debt collection practices contribute . . . to invasions of individual privacy."), the complaint also alleged that Rodenburg's actions—communicating to Williams's employer about the debt, garnishing her wages without legal authority, and willfully continuing to collect the debt after having been told about its potential mistake—amounted to common law invasion of privacy. Williams also alleged that Rodenburg had converted her wages and that its actions caused her to suffer emotional distress, humiliation, and temporary interference with the use and enjoyment of her property.

Rodenburg filed a claim under the policy for coverage of the Williams lawsuit. Cincinnati denied coverage, and Rodenburg later settled with Williams. Rodenburg then brought this action seeking a declaratory judgment that Cincinnati had breached its policy-created contractual duties to defend and indemnify Rodenburg. The district court found that the policy did not provide coverage for any alleged interference with Williams's use and enjoyment of her wages. It concluded that the alleged emotional distress was "bodily injury" under the policy, but that it either was not "caused by an 'occurrence'" or was excluded from coverage by the policy's "Expected or Intended Injury" exclusion. Although the district court then found that the Williams complaint's factual allegations implicated injury that was "personal and advertising injury" under the policy, it held that the policy's "Distribution of Materials in Violation of Statutes" exclusion (Violation of Statutes Exclusion) excluded coverage for that injury. Concluding that the policy did not provide coverage for the Williams lawsuit, the district court held that Cincinnati had no duty to defend Rodenburg under the policy and granted summary judgment in Cincinnati's favor.

Rodenburg appeals, arguing that the alleged emotional distress was covered by the policy because it was "caused by an 'occurrence'" and was not expected or intended. Rodenburg also argues that the policy's Violation of Statutes Exclusion did not apply.[2]

## II. Discussion

We review the district court's grant of summary judgment *de novo*. <u>Landers Auto Grp. No. One, Inc. v. Cont'l W. Ins. Co.</u>, 621 F.3d 810, 812 (8th Cir. 2010). We will affirm the grant of summary judgment only if there is no genuine issue of

[2]Rodenburg does not appeal the district court's finding that the alleged interference with Williams's use and enjoyment of her property was not a policy-covered injury.

-4-

material fact that Cincinnati did not breach its contractual duties to defend and indemnify Rodenburg under North Dakota law and thus is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Hiatt v. Mazda Motor Corp., 75 F.3d 1252, 1255 (8th Cir. 1996) (we apply state substantive law and federal procedural law in diversity cases). Because "[a]n insurer's duty to defend is broader than its duty to indemnify," Forsman v. Blues, Brews & Bar-B-Ques, Inc., 903 N.W.2d 524, 535 (N.D. 2017), Cincinnati's duty to indemnify arises under the policy only if it first had a duty to defend. We thus focus our analysis on whether Cincinnati had a duty to defend Rodenburg in the Williams lawsuit.

Cincinnati had a duty to defend the entire lawsuit if there was a possibility of policy coverage for any one of Williams's claims against Rodenburg. See Tibert v. Nodak Mut. Ins. Co., 816 N.W.2d 31, 42 (N.D. 2012). The language of the contract determines the scope of the policy's coverage. K & L Homes, Inc. v. Am. Fam. Mut. Ins. Co., 829 N.W.2d 724, 728 (N.D. 2013). We "resolve any doubt . . . in favor of the duty to defend." First Nat'l Bank & Trust Co. of Williston v. St. Paul Fire & Marine Ins. Co., 971 F.2d 142, 144 (8th Cir. 1992) (citation omitted) (applying and interpreting North Dakota law). "[I]f the policy language is clear on its face, there is no room for construction," however, and if the policy unambiguously precludes coverage, "we will not rewrite a contract to impose liability on an insurer." K & L Homes, 829 N.W.2d at 728 (citation omitted). After determining the scope of the policy's coverage, we determine whether Williams's claims were possibly covered based on the allegations in the complaint. See First Nat'l Bank, 971 F.2d at 144. "[T]he duty to defend does not depend on the nomenclature of the claim. Rather, the focus is on the basis for the injury." Nodak Mut. Ins. Co. v. Heim, 559 N.W.2d 846, 852 (N.D. 1997) (citation omitted).

## A. Covered Injuries

Cincinnati had a duty to defend Rodenburg if Williams alleged either "bodily injury" or "personal and advertising injury" that was "caused by an 'occurrence.'" Williams's alleged emotional distress meets the policy's definition of "bodily injury." Any injury allegedly caused by certain enumerated offenses meets the policy's definition of "personal and advertising injury." Neither party disputes that Williams's complaint alleged both "bodily injury" and "personal and advertising injury." The question then is whether those injuries were "caused by an 'occurrence.'"

The policy first defines "occurrence" as "[a]n accident . . . that results in 'bodily injury.'" Rodenburg contends that Williams's alleged "bodily injury" was the result of an accident—its mistaking Williams for its judgment debtor. Williams's complaint does not allege that she suffered emotional distress as a result of Rodenburg's mistake about Williams's identity, however. It instead alleges that she suffered emotional distress as a result of Rodenburg's contacting her employer and co-workers about her alleged debt, ignoring her when she informed Rodenburg of its mistake, and subsequently garnishing her wages for six weeks. See Landers Auto Grp., 621 F.3d at 815 (applying Arkansas law and concluding that the claims against the insured did not arise from the accident—mistakes in accounting—but from the subsequent intentional acts—repossessing the vehicle and failing to negotiate in good faith—taken by the insured). We reject Rodenburg's contention that its mistaken belief about its rights transforms those conscious actions into "accidents." Under that approach, "any conscious decision that in retrospect appears to have been imprudent may be termed a 'mistake.'" First Nat'l Bank, 971 F.2d at 145. The complaint clearly alleges that Williams's emotional distress was the result of Rodenburg's intentional actions and therefore was not "caused by an ['accident that results in . . . "bodily injury"']."

The policy also defines an "occurrence" as an "offense that results in 'personal and advertising injury.'" The policy does not define "offense," but does provide a list of "offenses," including defamation, malicious prosecution, and publication of information in violation of privacy, that give rise to "personal and advertising injury." Thus, if Williams's complaint alleged injury resulting from any of those offenses, such injury would both meet the definition of "personal and advertising injury"—which, as set forth above, includes alleged "bodily injury"—and have been "caused by an 'occurrence.'"

As noted above, Williams's complaint alleged that she suffered injury as a result of Rodenburg's communication of information about the debt to third parties and that that communication violated her privacy, was potentially disgraceful to her, and "intruded upon and interfered with [her] place of employment." The complaint thus alleged injury resulting from defamation and Rodenburg's privacy-violating publication of information. See N.D. Cent. Code § 14-02-02 (defamation is effected by libel); id. § 14-02-03 (civil libel is "false and unprivileged publication . . . which exposes any person to hatred, [or] contempt, . . . or which has a tendency to injure the person in the person's occupation"); see also 15 U.S.C. § 1692(a). Williams's complaint also averred malicious prosecution-based injury resulting from Rodenburg's attempted debt collection in the absence of legal authority. See N.D. Pattern Jury Instruction Civ. No. C-13.00 (2019) (to prove malicious prosecution under North Dakota law, a plaintiff must establish, among other things, that the defendant instituted a civil proceeding against the plaintiff and that there was no probable cause for the proceeding). Cincinnati therefore had a duty to defend Rodenburg against the Williams lawsuit because the complaint alleged "personal and advertising injury" that was "caused by an 'occurrence.'" See First Nat'l Bank, 971 F.2d at 144 (we "resolve any doubt . . . in favor of the duty to defend.")

B. The Exclusions

Cincinnati may still prove that it did not breach its duty to defend, however, by showing that any possibly covered injuries are excluded from coverage under one of the policy's exclusions. See Forsman, 903 N.W.2d at 531 (once the insured establishes that there were covered injuries, the insurer has the burden to prove that an exclusion to coverage applies).

The Violation of Statutes Exclusion excludes coverage for:

8. Distribution of Material in Violation of Statutes

> Any liability arising directly or indirectly out of any action or omission that violates or is alleged to violate:
>
> (a) The Telephone Consumer Protection Act (TCPA), . . . ;
>
> (b) The CAN-SPAM Act of 2003, . . . ; or
>
> (c) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Cincinnati argues that the exclusion applied because the FDCPA is a statute that "prohibits or limits the . . . communicating . . . of material or information." See 15 U.S.C. § 1692d (limiting debt collectors' ability to use threats of violence, publicize lists of consumers allegedly refusing to pay debts, cause a telephone to ring repeatedly or continuously, or engage someone in telephone conversation repeatedly or continuously).

-8-

Rodenburg asks that we construe the Violation of Statutes Exclusion more narrowly, arguing that FDCPA violations are not included in Subsection 8(c) because the FDCPA does not limit communication in the same way that the TCPA and the CAN-SPAM Act of 2003 do.[3]  See Bullseye Rest., Inc. v. James River Ins. Co., 387 F. Supp. 3d 273, 282–84 (E.D.N.Y. 2019) (applying New York law and finding, based on rules of construction, including *ejusdem generis*, more than one reasonable reading of an identical exclusion).  Rodenburg reasons that applying a literal reading of Subsection 8(c) would exclude from insurance coverage a major source of potential liability—alleged FDCPA violations—for a debt collection law firm like itself.

North Dakota law does not permit us to apply rules of construction to the policy's language, however, unless we first find that the language is ambiguous. K & L Homes, 829 N.W.2d at 728.  "Ambiguity . . . exists when the language can be reasonably construed as having at least two alternative meanings . . . ." Kief Farmers Coop. Elevator Co. v. Farmland Mut. Ins. Co., 534 N.W.2d 28, 32 (N.D. 1995). Although the Violation of Statutes Exclusion uses broad language, the words are not susceptible to multiple meanings, contra Herald Sq. Loft Corp. v. Merrimack Mut. Fire Ins. Co., 344 F. Supp. 2d 915, 919–20 (S.D.N.Y. 2004) ("pollutant" could be interpreted narrowly within exclusion's traditional understanding and purpose or literally and expansively); the literal reading does not contradict another policy provision, see Aid Ins. Servs., Inc. v. Geiger, 294 N.W.2d 411, 414 (N.D. 1980) (finding "patent" ambiguity where literal, broad reading of an exclusion contradicted another exclusion); and a lay person would understand the exclusion as written, see Kief Farmers, 534 N.W.2d at 32 ("We consider whether a person not trained in the

---

[3]The TCPA prohibits or limits telemarketing and use of automatic dialing systems or artificial or prerecorded voices.  See 47 U.S.C. § 227(b)(1)(A).  The Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (CAN-SPAM Act) prohibits or limits unsolicited commercial electronic mail.  15 U.S.C. § 7701 et seq.

law or in the insurance business can clearly understand the language."). The policy language is unambiguous and clear on its face. We therefore must enforce it as written. The Violation of Statutes Exclusion excludes coverage for Rodenburg's potential FDCPA liability because the statute falls within the plain language of Subsection 8(c). See 15 U.S.C. § 1692d.

Rodenburg argues that even if the policy excluded coverage for the injury caused by the alleged FDCPA violations, it did not exclude coverage for the injury caused by the alleged intentional torts because "Cincinnati cannot show that a violation of the FDCPA caused Rodenburg to invade [Williams's] privacy, defame her, or maliciously prosecute her." The language of the Violation of Statutes Exclusion is broad, however, excluding coverage for not only statutory liability but also "[a]ny liability arising directly or indirectly out of any action or omission that violates or is alleged to violate" the FDCPA. "The words 'arising out of' mean causally connected with, not 'proximately caused by' . . . ." Norgaard v. Nodak Mut. Ins. Co., 201 N.W.2d 871, 875 (N.D. 1972) (citation omitted). "The term is ordinarily understood to mean 'originating from,' or 'growing out of,' or 'flowing from.'" Id. (citation omitted).

The question, therefore, is whether Williams's complaint alleged covered injury that did not originate from allegedly FDCPA-violating conduct. It did not. As discussed above, the policy covers only Williams's alleged injury that was caused by defamation, malicious prosecution, or publication in violation of privacy. The complaint alleges the conduct underlying the FDCPA claims was the same conduct underlying the invasion of privacy claim. The unpled defamation and malicious prosecution offenses similarly flow from Rodenburg's allegedly FDCPA-violating conduct—unprivileged communication with third parties allegedly violates 15 U.S.C. § 1692c(b), and Rodenburg's collection actions lacking probable cause allegedly violate 15 U.S.C. § 1692f. Thus, the Violation of Statutes Exclusion excludes coverage for liability arising from those offenses, and the policy does not cover

-10-

Rodenburg's potential liability to Williams for any of the covered injury alleged in the complaint.[4]

## III. Conclusion

Williams's complaint alleged "personal and advertising injury" that was "caused by an 'occurrence.'" Any potential liability arose either directly or indirectly from conduct that was alleged to violate the FDCPA, however, and was thus excluded from coverage by the Violation of Statutes Exclusion. Cincinnati therefore did not breach its contractual duty to defend Rodenburg, and so we need not reach the question whether Cincinnati had a duty to indemnify Rodenburg for the Williams lawsuit.

The judgment is affirmed.

_____

---

[4]Because the Violation of Statutes Exclusion excludes coverage for any covered injury alleged in Williams's complaint, including alleged "bodily injury" "caused by an ['offense that results in "personal and advertising injury"']," we need not reach the policy's Expected or Intended Injury exclusion.